**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

| | |
|---|---|
| RYAN ROACH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PREMIUM MERCHANT FUNDING, LLC, PREMIUM MERCHANT FUNDING ONE, LLC, and PREMIUM MERCHANT FUNDING 18, LLC,<br><br>Defendants.<br><br>Counterclaim-Plaintiffs,<br>-against-<br><br>RYAN ROACH and INDALOOP, LLC,<br><br>Counterclaim-Defendants. | **Case No. 1:26-cv-01139-DEH-BCM**<br><br>Hon. Dale E. Ho, U.S.D.J.<br>Hon. Barbara C. Moses, U.S.M.J.<br><br>**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AGAINST PLAINTIFF AND COUNTERCLAIM-DEFENDANT INDALOOP, LLC**<br>**JURY TRIAL DEMANDED** |

-----------------------------------------------------------X

Defendants Premium Merchant Funding 18, LLC, Premium Merchant Funding One, LLC, and the party named in the First Amended Complaint as "Premium Merchant Funding LLC," by their undersigned counsel, answer the First Amended Complaint, assert affirmative defenses, and assert counterclaims as set forth below. Except as expressly admitted, Defendants deny each allegation of the First Amended Complaint.

## I. PRELIMINARY STATEMENT

This is a dispute between commercial parties over the economics of an independent sales organization's participation in a commercial-finance program. It is not a wage case. The First Amended Complaint's effort to recast it as one fails on the terms of the parties' written agreements and on the records of how the relationship actually operated.

Premium Merchant Funding operates a program through which merchant capital advances and related commercial financing are offered to businesses. Independent sales organizations ("ISOs") market that program on a non-exclusive basis and submit merchant

applications to it. PMF alone decides whether any merchant is accepted and funded. The ISO's sole compensation is a stated percentage of the commission and Professional Service Fee revenue that PMF actually receives on transactions that fund, subject to chargeback if a merchant defaults. The agreements give neither party the power to direct and control the day-to-day activities of the other. Plaintiff set his own hours and chose his own place of work: no Defendant scheduled, recorded, or approved his time, and the building access records for PMF's 55 Water Street office reflect no activity on his access card from November 1, 2023 through August 29, 2025. PMF made lead batches available to participants, who were free to work them or to develop their own merchant prospects; Plaintiff did both, including through his own merchant-application link, which carried his referral identifier and which he placed in more than ten thousand of his outbound emails.

Within that program, what is held and exchanged are rights in transactions, not hours: the right to a lead, to a merchant file, to a funded deal, to a share of its commission and Professional Service Fee, and to its renewals. Participants allocate those rights among themselves transaction by transaction. The records of this relationship reflect exactly that. Between December 2021 and July 2025, Indaloop, LLC received commission or Professional Service Fee credit on 142 transaction entries involving 58 merchants and 31 different funders; 112 of those entries were shared with one or more of 18 other participants, on allocations stated transaction by transaction; Plaintiff's share of commission ranged across 18 different percentages; and Indaloop drew against its accrued commission balance 62 times.

Because ISOs solicit merchants on behalf of a regulated commercial-finance program, the program imposes the compliance obligations that federal and state law require of it, including do-not-call scrubbing, the handling of opt-out requests, and state commercial-financing disclosure rules. Those obligations follow from the law governing the program. They are not the incidents of an employment relationship.

The First Amended Complaint does not engage with any of this. It substitutes an hours-worked framework that the parties never adopted: a recurring sixty-hour week, performed by Plaintiff at his own home on his own devices, that Plaintiff does not allege anyone recorded, supervised, or required, and a demand that commissions earned on funded transactions be recharacterized as hourly wages. Defendants do not accept that framework. The questions this case presents are the questions the parties' agreements and records answer: which entity contracted with which party; what rights each held in which transactions; what was earned, advanced, and paid on each; and whether Plaintiff and Indaloop complied with the obligations that governed their solicitation of merchants.

PMF's contemporaneous business records, including the systems Plaintiff himself used during the period he participated in the Program through Indaloop, contradict the central factual premises of the Complaint. Those records are to be produced in discovery. The records show that Plaintiff: (i) participated under written agreements containing express terms providing that the ISO or Rep "is an independent contractor," "is not an employee of PMF," and that nothing in the agreement gives either party "the power to direct and control the day-to-day activities of the other," including a December 21, 2021 agreement identifying Premium Merchant Funding 18, LLC as the PMF party in its notice provision and Indaloop, LLC as the ISO, and using the name "Premium Merchant Funding LLC" in the preamble as a drafting error in the use of the Premium Merchant Funding trade name, and an April 20, 2023 agreement identifying Premium Merchant Funding One, LLC as the PMF party, identifying Ryan Roach as "Rep," and also identifying Indaloop, LLC; (ii) accessed the ISO portal on 56 recorded occasions during the period for which access records exist, from multiple internet protocol addresses, using devices neither owned nor controlled by Defendants; (iii) received commission disbursements routed to the account associated with Indaloop, LLC, including a 2022 Form 1099-NEC issued by Premium Merchant Funding 18, LLC to Indaloop, LLC; (iv) self-identified in his own

contemporaneous compliance correspondence as “Underwriting Specialist,” not the “Sales Representative” title referenced elsewhere; (v) placed the overwhelming majority of his outbound calls through the Zoom Phone mobile application rather than from any PMF office deskphone, to telephone numbers almost none of which appear in the CRM records associated with his account, including more than one thousand calls placed before 8:00 a.m. local time at the called party's location; and (vi) did not submit the lead and distribution lists he used for do-not-call scrubbing, as PMF's Policy Manual required and as PMF reminded him in writing.

Plaintiff alleges that he performed his work remotely from his own home beginning in or about April 2022, that he formed and used his own limited liability company, that no Defendant tracked his hours, and that he "generally adhered" to a schedule while remote. He does not allege who set his start and end times, who observed him, or how any Defendant could have known what he did on any given day.

Plaintiff bears the burden of proving the hours he claims. Defendants demand strict proof of each hour, each day, each activity, and each location alleged. Plaintiff alleges that he performed his work remotely from his own home, using devices and instrumentalities not owned or controlled by Defendants. Defendants therefore lack visibility into activity occurring on Plaintiff's personal devices, within his home office, or through systems outside Defendants' control. Defendants further state that the records available to them reflect discrete events occurring within particular systems, including communications, platform sessions, telephony events, transaction events, and related business records, but do not record when Plaintiff began work, ceased work, performed no work, engaged in personal activity, or performed activity through systems outside Defendants' control. Defendants deny that any aggregation of such records supplies proof of the hours alleged without further evidence identifying the activity performed, its duration, and the basis upon which it is claimed to constitute compensable time.

## II. GENERAL DENIAL

Defendants deny each and every allegation contained in the Complaint, except those expressly admitted herein, and deny that Plaintiff is entitled to any relief whatsoever. Any allegation not specifically responded to below is denied. Fed. R. Civ. P. 8(b).

## III. RESPONSES TO NUMBERED ALLEGATIONS

In response to the specifically numbered paragraphs of the First Amended Complaint (the "Complaint"), and using the corresponding paragraph numbering, Defendants answer as follows. Defendants reserve the right to amend, supplement, or supersede this Answer upon further investigation and the completion of discovery.

Defendants state at the outset that the Complaint defines "Premium Merchant Funding" and "Defendants" to mean Premium Merchant Funding LLC, Premium Merchant Funding One, LLC, and Premium Merchant Funding 18, LLC collectively, and alleges that the three are "the same entity." Defendants deny that definition. Premium Merchant Funding 18, LLC and Premium Merchant Funding One, LLC are separately organized legal entities. Defendants do not admit that the name "Premium Merchant Funding LLC" identifies a separate legal entity. Each response below is made on behalf of the answering Defendants as expressly stated. As used in these responses, "PMF" refers to the answering Defendants, Premium Merchant Funding 18, LLC and Premium Merchant Funding One, LLC, without conceding that they are a single entity. Where an allegation is directed to the collective defined term, Defendants deny that the allegation applies collectively except to the extent expressly admitted as to a specific Defendant.

### Preliminary Statement Allegations (¶¶ 1-3)

1. Defendants deny the allegations in Paragraph 1 of the Complaint. Defendants further deny the definition of "Premium Merchant Funding" set forth in footnote 1 of the Complaint and deny that Premium Merchant Funding One, LLC, Premium Merchant Funding 18, LLC, and the party named as "Premium Merchant Funding LLC" are the same entity. Defendants further state that the First Amended Complaint does not identify which legal entity allegedly employed Plaintiff during each period alleged.
2. PMF denies the allegations in Paragraph 2 of the Complaint.
3. Paragraph 3 purports to characterize the nature of the claim Plaintiff asserts and states legal conclusions, to which no response is required. To the extent a response is required, PMF denies the allegations in Paragraph 3 of the Complaint.

**The Parties (¶¶ 4-7)**

4. PMF admits the allegations in Paragraph 4 of the Complaint.
5. Defendants deny Paragraph 5. Defendants are not aware of any legal entity named Premium Merchant Funding LLC organized under the laws of the State of New York. Defendants further state that "Premium Merchant Funding" has been used as a trade name in business records and agreement materials, and deny that Plaintiff's use of "Premium Merchant Funding LLC" establishes the existence of a separate legal entity, an employing entity, or the collective identity of Premium Merchant Funding 18, LLC, Premium Merchant Funding One, LLC, or any other affiliated entity. Except as expressly stated, the allegations of Paragraph 5 are denied.
6. Defendants admit that Premium Merchant Funding One, LLC is a limited liability company organized under the laws of the State of New York and admit that Premium Merchant Funding One, LLC and Premium Merchant Funding 18, LLC are affiliated entities. Defendants deny that either entity is the same entity as the party named in the Complaint as Premium Merchant Funding LLC, deny that affiliation alone establishes common control of labor, joint

employment, or single-employer status, and state that the First Amended Complaint alleges no entity-specific facts of employment as to each Defendant. Except as expressly admitted, Defendants deny the allegations in Paragraph 6 of the Complaint.

7. Defendants admit that Premium Merchant Funding 18, LLC is a limited liability company organized under the laws of the State of Delaware and authorized to transact business in the State of New York as a foreign limited liability company, and admit that Premium Merchant Funding 18, LLC is affiliated with Premium Merchant Funding One, LLC. Defendants deny that Premium Merchant Funding 18, LLC is the same entity as the party named in the Complaint as Premium Merchant Funding LLC, deny that affiliation alone establishes common control of labor, joint employment, or single-employer status, and state that the First Amended Complaint alleges no entity-specific facts of employment as to each Defendant. Except as expressly admitted, Defendants deny the allegations in Paragraph 7 of the Complaint.

**Jurisdiction and Venue (¶¶ 8-12)**

8. PMF admits that Plaintiff purports to invoke this Court's jurisdiction under 29 U.S.C. § 216(b), and denies that Plaintiff states a claim upon which relief may be granted under the FLSA. Except as so admitted, PMF denies the allegations in Paragraph 8 of the Complaint.

9. PMF admits that Plaintiff purports to invoke this Court's jurisdiction under 28 U.S.C. § 1331. PMF denies that the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, denies that Plaintiff has alleged any factual basis for that figure, and states that Plaintiff alleges in Paragraph 58 of the Complaint that his own claimed unpaid wages total approximately $157,374. Except as so admitted, PMF denies the allegations in Paragraph 9 of the Complaint.

10. PMF admits that this Court has supplemental jurisdiction over claims pleaded under the New York Labor Law, and denies that Plaintiff states a claim upon which relief may be granted

under the NYLL. Except as so admitted, PMF denies the allegations in Paragraph 10 of the Complaint.

11. PMF admits that venue is proper in this District. Except as so admitted, PMF denies the allegations in Paragraph 11 of the Complaint.

12. Defendants deny that Plaintiff is entitled to a declaratory judgment or to any other relief. Defendants further state that Plaintiff, who alleges his engagement ended in or about August 2025, does not allege a present or imminent injury supporting prospective declaratory or injunctive relief.

**Statement of Facts; Overview (¶¶ 13-42)**

13. PMF admits that it provides capital-advance and related commercial financing services to commercial merchants. Defendants deny the allegations as pleaded against the collective defined term and state that Plaintiff does not attribute the alleged lines of business, offices, or operations to any particular Defendant. Except as so admitted, PMF denies the allegations in Paragraph 13 of the Complaint.

14. Defendants deny the allegations as pleaded against the collective defined term in Paragraph 14 of the Complaint and state that Plaintiff does not attribute the alleged lines of business, offices, or operations to any particular Defendant.

15. Defendants deny the allegations in Paragraph 15 of the Complaint, including any allegation that Plaintiff was hired as an employee. Defendants affirmatively state that a written agreement dated December 21, 2021 identifies Premium Merchant Funding 18, LLC as the PMF party in its notice provision, identifies Indaloop, LLC as the ISO, bears the DocuSign signature of Ryan Roach above the typed names “Ryan Roach” and “INDALOOP LLC”, and uses the name “Premium Merchant Funding LLC” in the preamble as a drafting error in the use of the Premium Merchant Funding trade name. Defendants further state that a written agreement dated April 20, 2023 identifies Premium Merchant Funding One, LLC as the PMF party,

identifies Ryan Roach as "Rep," and also identifies Indaloop, LLC. Defendants further state that they have no knowledge of and no access to the internal operations, management, staffing, or records of Counterclaim-Defendant Indaloop, LLC; that Plaintiff conducted his activity from his own premises using his own equipment; that Defendants therefore have no knowledge of the arrangement between Plaintiff and Indaloop, or between Indaloop and any person it engaged; and that Plaintiff and Indaloop were and remain responsible for ensuring that Indaloop and any person acting for it complied with the contractual and regulatory obligations governing merchant contact, lead sourcing, and use of PMF-supplied systems. Defendants further state that the First Amended Complaint does not identify which legal entity allegedly hired Plaintiff, on what terms, or through what act. Defendants refer the Court to the instruments and otherwise deny Paragraph 15.

16. Defendants deny Paragraph 16 except that Plaintiff himself alleges he performed his activities remotely from his own home beginning in or about April 2022 and only occasionally traveled to a PMF office. (i) Defendants further state that access records reflect 56 recorded ISO-portal sessions by Plaintiff during the period for which such records exist, originating from multiple internet protocol addresses and from devices neither owned nor controlled by Defendants; (ii) that the outbound calls placed from Plaintiff's assigned extension originated, almost without exception, from the Zoom Phone mobile application rather than from a deskphone at any PMF office, and included more than one thousand calls placed before 8:00 a.m. local time at the called party's location, as set forth in the Counterclaims below; (iii) that the First Amended Complaint does not identify who set Plaintiff's daily start and end times while he worked remotely, who observed his remote activity, how his remote time was measured, or which Defendant directed it. Except as so admitted, PMF denies the allegations in Paragraph 16 of the Complaint.

17. PMF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 of the Complaint, and on that basis denies them.

18. PMF lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 of the Complaint, including the allegation that Plaintiff had at that date "worked for Premium Merchant Funding for about a week," and on that basis denies them. Defendants deny that any identified person exercised authority over Plaintiff's schedule, work location, hours, methods, compensation, or continued participation, and state that Paragraph 18 does not identify the person, that person's employer, or the authority allegedly exercised.

19. PMF denies the allegations in Paragraph 19 of the Complaint. Defendants state that the agreements identify the parties and associated entities reflected in those instruments and refer the Court to them, true and correct copies of which will be produced in discovery.

20. Defendants deny Paragraph 20 except that Plaintiff alleges he formed Indaloop, LLC, filed its formation documents, and paid the associated fee. Defendants lack knowledge sufficient to form a belief concerning Indaloop's ownership, management, tax treatment, banking, or business purposes and therefore deny those allegations. Defendants deny that Indaloop was formed solely to receive payment, and affirmatively state that payments were routed to the account associated with Indaloop, LLC and that a 2022 Form 1099-NEC was issued by Premium Merchant Funding 18, LLC to Indaloop, LLC and furnished to Plaintiff.

21. PMF denies the allegations in Paragraph 21 of the Complaint.

22. Defendants admit that an Independent Sales Contractor Agreement was executed on or about December 21, 2021, that Indaloop, LLC is identified as the ISO thereon, and that the signature block identifies PMF's Chief Operating Officer. Defendants further state that the Agreement’s notice provision identifies the PMF party as Premium Merchant Funding 18, LLC, that the Agreement bears the DocuSign signature of Ryan Roach above the typed names “Ryan Roach” and “INDALOOP LLC”, and that the preamble uses the name “Premium Merchant Funding

LLC" as a drafting error in the use of the Premium Merchant Funding trade name. Defendants deny the language or legal effect Plaintiff attributes to the preamble's entity reference. Defendants respectfully refer the Court to that Agreement for its complete and accurate contents, a true and correct copy of which will be produced in discovery. Defendants deny that the Agreement was executed "at Premium Merchant Funding's direction." Defendants further state that the December 21, 2021 agreement package includes separately acknowledged rules governing conduct by persons entering 55 Water Street, and that Plaintiff does not allege how premises rules applied to activity he alleges he performed remotely from his own home. Except as expressly admitted, Defendants deny the allegations in Paragraph 22 of the Complaint.

23. PMF admits that an Independent Sales Contractor Agreement was executed on or about April 20, 2023, that Ryan Roach is identified as "Rep" thereon and that Indaloop, LLC is also identified in the agreement materials, that the preamble identifies Premium Merchant Funding One, LLC as the PMF party, and that the Agreement was signed by PMF's Chief Operating Officer. PMF respectfully refers the Court to that Agreement for its complete and accurate contents, a true and correct copy of which will be produced in discovery. Except as so admitted, PMF denies the allegations in Paragraph 23 of the Complaint.

24. PMF admits that PMF's Chief Operating Officer is identified as Chief Operating Officer in the signature block of each Agreement and that he executed the April 20, 2023 Agreement. PMF denies that Premium Merchant Funding LLC and Premium Merchant Funding One, LLC are the same entity, denies that the identity of a signatory establishes that two separate limited liability companies are a single legal entity, and denies that Plaintiff was employed by any Defendant at any time. Except as so admitted, PMF denies the allegations in Paragraph 24 of the Complaint. Defendants further state that a common signatory does not establish that separate entities employed Plaintiff or that any entity controlled his daily activity.

25. PMF admits that the activities contemplated by the Agreements included promotion of PMF's merchant capital-advance program, solicitation of merchant applications to the Program, and merchant-facing support in connection with submitted applications. PMF respectfully refers the Court to the Agreements for their complete and accurate contents. PMF denies that PMF "tasked" or directed Plaintiff in the manner alleged, denies that Plaintiff was required to perform the activities described on any PMF-imposed schedule, and denies the employment characterizations embedded in Paragraph 25. Defendants further state that PMF retained the decision whether to accept or decline any merchant application, and that the First Amended Complaint does not identify which merchants Plaintiff was directed to contact, by whom, on what schedule, or under what consequence for noncompliance. Except as so admitted, PMF denies the allegations in Paragraph 25 of the Complaint.

26. PMF admits that activities associated with Indaloop's participation in the Program were performed either remotely or, on occasion, at PMF's 55 Water Street office. PMF denies that Plaintiff was employed by any Defendant and denies the employment characterizations embedded in Paragraph 26. Except as so admitted, PMF denies the allegations in Paragraph 26 of the Complaint. Defendants further state that Plaintiff does not allege the number of office days, the periods of attendance, or who required attendance.

**Misclassification and Control Allegations (¶¶ 27-42)**

27. PMF denies the allegations in Paragraph 27 of the Complaint, including all allegations of misclassification and all allegations that Plaintiff was an employee within the meaning of the FLSA or the NYLL. Defendants further state that Plaintiff's misclassification theory does not identify the entity that allegedly employed him, the period of alleged employment, or the specific control allegedly exercised over activity he alleges he performed remotely from his own home.

28. PMF denies the allegations in Paragraph 28 of the Complaint, and specifically denies that any Defendant adopted any practice "to avoid" any wage-and-hour or tax obligation. The only tax obligation Paragraph 28 identifies is payroll tax, and federal payroll-tax law itself treats industry practice as the measure of a reasonable classification. Engaging independent sales organizations and their principals as independent contractors, under written agreements, on commission-only terms contingent on funded transactions, with compensation reported on Form 1099 rather than Form W-2, is the long-standing recognized practice of a significant segment of the small-business-financing and merchant-cash-advance industry. Congress made exactly that showing, long-standing recognized practice of a significant segment of the industry, a statutory reasonable basis for treating a worker as other than an employee for federal employment-tax purposes. Revenue Act of 1978, Pub. L. No. 95-600, § 530(a)(2)(C), 92 Stat. 2763, 2885, as amended by Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1122, 110 Stat. 1755, 1766. Commissions paid to Indaloop, LLC for 2022 were reported on a Form 1099-NEC issued by Premium Merchant Funding 18, LLC to Indaloop, LLC. The First Amended Complaint does not allege that any taxing authority has ever questioned that treatment.

29. PMF denies the allegations in Paragraph 29 of the Complaint. Defendants further state that Plaintiff set his own hours and his own place of work; that building access records for PMF's 55 Water Street office reflect no activity on Plaintiff's access card from November 1, 2023 through August 29, 2025; and that Plaintiff does not allege that any attendance, schedule, script, meeting, or quota requirement was ever enforced against him.

30. Defendants deny Paragraph 30. Defendants lack knowledge sufficient to form a belief concerning the authenticity, sender, recipients, context, distribution, and applicability of the described message and therefore deny those allegations. Defendants further state that Plaintiff alleges he performed his activities remotely from his own home beginning in or about April

2022, and does not allege that he attended the office on or after the date referenced (and the building access records for PMF's 55 Water Street office reflect no activity on Plaintiff's access card from November 1, 2023 through August 29, 2025), that he was charged any fee, or that any consequence was imposed upon him. Defendants further state that Paragraph 30 alleges a communication from an individual Plaintiff identifies as his "Team Leader" to what Plaintiff describes as a "sales team," yet Plaintiff does not identify the composition of that team, the period during which he allegedly belonged to it, whether the team was unique to him or representative of other participants, whether different teams operated under different leaders or practices, or how the alleged communication establishes a policy applicable beyond the particular team alleged. Defendants further state that the person Plaintiff identifies as his "Team Leader," the participant Plaintiff identifies in Paragraph 30 of the Complaint as his "Team Leader", was himself a participant in the Program who divided with Plaintiff, transaction by transaction, the commission and Professional Service Fee on deals they worked together. The Indaloop Payout Sheet records 86 entries, involving 24 merchants funded between December 3, 2021 and March 4, 2025, on which Plaintiff and that participant divided compensation on stated percentages, for example, 25 percent of the commission to Plaintiff and 5 percent to that participant on one transaction, and 15 percent to each on another. A participant who divides commissions with Plaintiff on their joint transactions is Plaintiff's counterparty, not a supervisor acting for any Defendant.

31. Defendants admit that Section 3 of the 2021 Agreement provides that the ISO "shall report weekly to PMF concerning sales of the Program," and respectfully refer the Court to that Agreement for its complete and accurate contents. Defendants deny that any Defendant required reports of hours worked, attendance, start times, or end times, and deny that reporting concerning merchant opportunities, submissions, or pending transactions establishes control

over Plaintiff's schedule, hours, or manner of performance. Except as expressly admitted, Defendants deny the allegations in Paragraph 31 of the Complaint.

32. PMF denies the allegations in Paragraph 32 of the Complaint. Defendants further state that Paragraph 32 does not identify the individual allegedly shadowed, that person's employer, role, authority, or relationship to Plaintiff. Defendants further state that the allegation itself reflects differences in experience, role, and responsibility among participants rather than a uniform structure applicable to all persons Plaintiff seeks to represent. Defendants further state that Plaintiff does not identify who conducted the alleged training, who required attendance at any meeting, which meetings Plaintiff attended, or what consequence followed from nonattendance. Defendants further state that Paragraph 32 alleges interaction with a more experienced participant and participation in meetings with other representatives, but does not identify any person who possessed authority to establish Plaintiff's hours, schedule, compensation, or continued participation. Plaintiff repeatedly pleads individualized transactional relationships, individualized merchant-development activity, individualized team structures, individualized experience levels, and individualized deal pipelines, while later attempting to characterize all sales representatives as a single uniform class.

33. Defendants deny Paragraph 33. Defendants lack knowledge sufficient to form a belief concerning each invitation, its recipients, mandatory status, Plaintiff's attendance, duration, and any consequence for nonattendance, and therefore deny those allegations. Defendants further state that Plaintiff does not allege which sessions he attended, whether he attended in person or remotely, for how long, how any such attendance relates to the hours he claims, or that he sought and was denied compensation for such attendance.

34. Defendants deny Paragraph 34 and the legal significance Plaintiff attributes to any title. Defendants state that Plaintiff transmitted correspondence from his PMF-associated email account bearing signature terminology, that Defendants did not compose or control the content

Plaintiff placed in his signature block, and that the agreements separately define the contractual role. Defendants further state that Plaintiff's outbound correspondence reflects the use of third-party message-tracking and link-instrumentation services in his merchant communications, and that Plaintiff does not allege whether he implemented or authorized those services. Defendants further state that Plaintiff does not allege who assigned him any title, what authority accompanied it, or how it affected his hours.

35. PMF denies the allegations in Paragraph 35 of the Complaint. Defendants further state that Plaintiff alleges the use of multiple distinct titles, including "Funding Specialist," "Managing Director," "Underwriting Specialist," and "SBA Lending Specialist," yet does not identify the duties, authority, compensation structure, training, merchant-development activities, reporting relationships, agreements, or contracting entities associated with those titles. Defendants further state that Paragraph 35 itself reflects differences in role, specialization, and responsibility among the persons Plaintiff later seeks to characterize as members of a common class or collective. Plaintiff himself alleges multiple distinct titles but does not allege that the holders of those titles performed the same work.

36. PMF denies the allegations in Paragraph 36 of the Complaint. Defendants further state that Plaintiff does not reconcile his allegation of a stated one-year term with his allegation that the relationship was terminable at will.

37. PMF denies the allegations in Paragraph 37 of the Complaint.

38. Defendants deny the allegations contained in Paragraph 38 except that Defendants admit the Agreement contains a termination provision. Defendants respectfully refer the Court to the Agreement for its complete and accurate contents. Defendants further state that Paragraph 38 mischaracterizes the Agreement. The Agreement does not provide that PMF may terminate "employment." Rather, the Agreement addresses termination of the contractual relationship created by the Agreement itself and expressly provides that the contracting party is an

independent contractor and not an employee. Defendants further state that the Agreement expressly provides that neither party possesses authority to direct and control the day-to-day activities of the other. Defendants further state that the provision cited by Plaintiff appears within a broader commercial-finance participation agreement containing compliance, confidentiality, merchant-protection, disclosure, regulatory, and program-participation provisions. Those compliance provisions distinguish between employees and independent contractors, regulate company-supplied technology and company-related records, and establish consequences for inappropriate, unlawful, or noncompliant conduct. The existence of contractual compliance requirements and consequences for breach does not convert the contractual relationship into employment or require PMF to tolerate unlawful or contractually prohibited conduct. Defendants deny that the cited provision has the meaning, effect, or significance alleged by Plaintiff. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 38.

39. PMF denies the allegations in Paragraph 39 of the Complaint, including Plaintiff's characterization of the termination provisions of the Agreements and the allegation that the contracted relationship was "functionally terminable at will," which is inconsistent with Plaintiff's allegation in Paragraph 36 of the Complaint that he was engaged for an initial one-year term continuing indefinitely unless terminated within that term. PMF respectfully refers the Court to the Agreements for their complete and accurate contents.

40. Defendants deny the allegations in Paragraph 40 except that Defendants admit Plaintiff was provided access to PMF systems and materials and that PMF distributed certain lead batches to participants in the Program. Defendants further state that the Agreements permitted PMF to engage other representatives and did not grant Plaintiff or Indaloop an exclusive right to market the Program. Defendants affirmatively state that compensation under the Agreements was transaction-contingent, payable only in connection with qualifying merchants accepted by

PMF and after PMF received the applicable payment, and subject to chargeback. Plaintiff also used an individualized merchant-application pathway through which prospective merchant applications could be attributed to his referral identity. Defendants further state that the Program operated with an ISO trading-floor model in which merchant opportunities, transaction attribution, exclusivity, renewal rights, commission allocations, and transaction-specific splits could vary by participant, transaction, merchant, and agreement. Defendants further state that participants were free to work the lead batches PMF made available or to develop their own merchant prospects, and that Plaintiff did both: between December 2023 and June 2025 his PMF email account sent at least 523 messages each addressed by blind copy to ten or more recipients, reaching 24,872 distinct email addresses; he placed his own merchant-application link, carrying his referral identifier "rroach," in more than 10,500 messages sent from his PMF email account between December 2021 and August 2025, so that a merchant could apply directly and have the application attributed to him; and of the 35,386 distinct telephone numbers called from his extension between May 2023 and May 2025, 390 appear in the CRM records associated with his account. Defendants deny that Plaintiff bore no opportunity for profit or loss and further state that Plaintiff does not identify which merchants were provided through PMF lead information, which merchants he developed through other channels, which opportunities he declined, what expenses he incurred, what transaction-specific arrangements he negotiated, or what economic risk he bore. Except as expressly admitted, Defendants deny the allegations in Paragraph 40.

41. Defendants deny the allegations in Paragraph 41 except that Defendants admit the Agreements contain noncompetition and restrictive-covenant provisions applicable to the person or entity identified as Rep or ISO under the applicable instrument. Defendants respectfully refer the Court to each Agreement for its complete and accurate terms and state that the provisions differ in scope and duration. Defendants further state that the Program operated with an ISO trading-

floor model in which participants could negotiate among themselves concerning merchant-opportunity ownership, exclusivity, transaction attribution, renewal rights, commission allocations, and transaction-specific splits. Defendants further state that Plaintiff engaged in such negotiations with other independent sales organizations concerning ownership of merchant opportunities, exclusivity, and allocation of commissions, as reflected in the transaction-by-transaction allocations set forth in Paragraphs 256 through 261 of the Counterclaims. Plaintiff does not allege that PMF enforced any restriction against him, denied him any identified merchant opportunity, prevented him from entering any identified transaction, or uniformly regulated the participant-to-participant allocation of merchant opportunities, renewals, splits, or commissions. Defendants deny that the restrictive provisions establish economic dependence or employee status. Except as expressly admitted, Defendants deny the allegations in Paragraph 41.

42. Defendants deny the allegations in Paragraph 42 except that Defendants admit the Agreements contain provisions addressing company-supplied technology, company-related records, monitoring, inappropriate or unlawful use, and stated consequences. Defendants respectfully refer the Court to the Agreements for their complete and accurate contents. Defendants further state that the provisions expressly refer to technology and records belonging to the company rather than to any employee or independent contractor, thereby distinguishing the two categories rather than identifying Plaintiff as an employee. Defendants further state that the Agreement provisions concern compliance, confidentiality, merchant-protection, disclosure, regulatory, and program-participation obligations associated with a regulated commercial-finance program, and that such provisions do not, without more, establish control over Plaintiff's schedule, hours, location, compensation, or manner of work. Defendants further state that Plaintiff does not identify what monitoring was actually performed as to him, what subject or activity was monitored, who reviewed any result, or how monitoring of company-supplied

technology imposed the daily schedule or hours he alleges. Defendants deny Plaintiff's characterization of those provisions and deny that they establish employer control or employee status. Defendants further state that the PMF Policy Manual is a single document furnished to employees, independent sales organizations, partners, and interns alike; that its compliance provisions are directed to "[a]ll PMF ISOs, Partners, and Employees"; that it addresses its reader "[a]s an independent contractor affiliated with Premium Merchant Funding" and refers the reader to "your independent contractor agreement for full details of your agreement with" PMF; and that terminology in it referring to employment reflects the breadth of its audience rather than the relationship of any particular recipient. Except as expressly admitted, Defendants deny the allegations in Paragraph 42.

**Compensation and Hours Worked (¶¶ 43-58)**

43. Defendants deny Paragraph 43. Defendants affirmatively state that the agreements calculate compensation as stated percentages of commission and Professional Service Fee amounts received by the applicable PMF entity in connection with qualifying merchant transactions; condition compensation on merchant acceptance and receipt of payment; establish payment timing; and authorize chargebacks. Defendants further state that the parties' records and the ISO trading-floor model distinguish among merchant opportunity, submission, transaction attribution, funded transaction, commission calculation, Professional Service Fee, participant split, renewal right, payout entry, clearance, draw request, approval, payment, adjustment, and chargeback. Defendants further state that Plaintiff does not identify any requested draw that was demanded and denied. Defendants further state that Plaintiff does not identify which recorded economic event he treats as the earning event, which amounts he contends were wages, when they became earned, or which Defendant allegedly owed them.

44. Defendants deny Paragraph 44 except that no payroll timesheets were maintained for Plaintiff, whom Defendants did not classify as an employee. Defendants specifically deny the allegation that Plaintiff received no draw against commissions. Indaloop, LLC received 62 draws against its commission balance between December 24, 2021 and August 4, 2025, totaling $83,021.57. Defendants deny that they lacked contemporaneous communications, transaction, call, access, or system records associated with the relationship. Defendants further state that those records reflect discrete system events, transaction events, communications, portal sessions, call-routing events, merchant opportunities, submissions, attributions, splits, renewals, payout entries, draw requests, and other commercial records, but no single source, and no unadjusted aggregation of multiple sources, constitutes a complete or additive measure of hours worked or compensable time. Defendants further state that Plaintiff, who alleges he worked remotely and unobserved using devices and instrumentalities not owned or controlled by Defendants, does not allege how his claimed hours were recorded, verified, reported, or known to any Defendant.

45. Defendants deny Paragraph 45, including the alleged recurring sixty-hour schedule and the allegation that Plaintiff worked evenings and weekends. PMF's Zoom Phone records for May 30, 2023 through May 27, 2025 reflect outbound calls from Plaintiff's extension on 500 days, of which 19 were Saturdays or Sundays. Defendants further state that Plaintiff does not identify, for any workweek, his daily start and end times, the activities performed, the location of the activity, the periods during which he performed no work, or the person who required or knew of the claimed hours. Defendants further state that the initial Complaint alleged that Plaintiff worked at least 60 hours per week "[f]rom November 2021 through the present" (ECF No. 1 ¶ 28), a period that, as of its filing on February 10, 2026, extended more than five months past the August 2025 end date Plaintiff now alleges.

46. Defendants deny Paragraph 46 and further state that Plaintiff does not identify any person who observed, directed, approved, or was informed of the specific hours he claims.

47. Defendants deny Paragraph 47. Defendants lack knowledge sufficient to form a belief concerning the document's authorship, creation date, distribution, applicable audience, effective period, mandatory status, and enforcement, and therefore deny those allegations. Defendants further state that Plaintiff does not allege that he received the document, that it applied to him, that it applied while he worked remotely from his own home, that any consequence followed from nonadherence, or that any Defendant observed or verified his adherence.

48. Defendants deny Paragraph 48. Defendants further state that a schedule describing a morning meeting with a door that locks, in-office standing call periods, one-on-one training sessions, and evening in-office sessions does not describe activity Plaintiff alleges he performed remotely from his own home; that Plaintiff does not allege which described elements he performed during any workweek at issue; and that Plaintiff's allegation that he "generally adhered" to the schedule while remote and unobserved supplies no measure of the hours he claims.

49. Defendants deny Paragraph 49 and further state that Plaintiff's effective-rate calculation depends on hours he has not particularized and on compensation events he has not identified.

50. Defendants deny Paragraph 50 and further state that Plaintiff's effective-rate calculation depends on hours he has not particularized and on compensation events he has not identified.

51. Defendants deny the allegations in Paragraph 51 of the Complaint. Defendants further state that the week identified in Paragraph 51 precedes the execution of the Independent Sales Contractor Agreement, which Plaintiff alleges in Paragraph 22 of the Complaint was signed on or about December 21, 2021, and precedes or overlaps the formation of Indaloop, LLC, which Plaintiff alleges in Paragraph 20 of the Complaint occurred on or about December 7, 2021. Defendants further state that Plaintiff does not identify the entity, agreement, terms, or person allegedly responsible for the pre-agreement period he claims.

52. Defendants deny Paragraph 52, including the alleged hours, effective rate, and amounts. Defendants further state that Plaintiff does not identify the daily times, activities, locations, or informed PMF actor for that week.
53. Defendants deny Paragraph 53, including the alleged hours, effective rate, and amounts. Defendants further state that Plaintiff does not identify the daily times, activities, locations, or informed PMF actor for that week.
54. Defendants deny Paragraph 54, including the alleged hours, effective rate, and amounts. PMF's Zoom Phone records reflect that during that week Plaintiff's extension placed outbound calls on 4 days, 457 of which connected, for a total recorded connected-call duration of approximately 164 minutes. Defendants further state that Plaintiff does not identify the daily times, activities, locations, or informed PMF actor for that week.
55. Defendants deny Paragraph 55, including the alleged hours, effective rate, and amounts. PMF's Zoom Phone records reflect that during that week Plaintiff's extension placed outbound calls on 5 days, 244 of which connected, for a total recorded connected-call duration of approximately 89 minutes. Defendants further state that Plaintiff does not identify the daily times, activities, locations, or informed PMF actor for that week.
56. Defendants deny Paragraph 56, including the alleged hours, effective rate, and amounts. PMF's Zoom Phone records reflect that during that week Plaintiff's extension placed outbound calls on 5 days, 441 of which connected, for a total recorded connected-call duration of approximately 191 minutes. Defendants further state that Plaintiff does not identify the daily times, activities, locations, or informed PMF actor for that week.
57. Defendants deny Paragraph 57, including the alleged hours, effective rate, and amounts. PMF's Zoom Phone records reflect that during that week Plaintiff's extension placed outbound calls on 5 days, 1,085 of which connected, for a total recorded connected-call duration of

approximately 483 minutes. Defendants further state that Plaintiff does not identify the daily times, activities, locations, or informed PMF actor for that week.

58. Defendants deny Paragraph 58, including the alleged amounts and the methodology by which they were derived. Defendants further state that the aggregate figure alleged is not the sum of its stated components; that Plaintiff's damages model depends on hours he has not particularized and on compensation events he has not identified; that Plaintiff does not attribute the alleged wage obligation to any specific Defendant; and that the initial Complaint alleged the identical figures of $123,236, $34,137, and $157,374 (ECF No. 1 ¶ 39) for a period alleged to run "through the present" (id. ¶ 28), and the First Amended Complaint repeats those figures unchanged after shortening the alleged period to end in August 2025.

**Recordkeeping Violations (¶¶ 59-63)**

59. Defendants deny Paragraph 59 and the entitlement alleged. Defendants state that no Notice and Acknowledgment of Pay Rate and Payday was issued because Plaintiff was not classified as an employee and no such notice was required. Defendants deny willfulness, deny injury, and deny any entitlement on behalf of any other person.

60. Defendants deny Paragraph 60 and the entitlement alleged. Defendants state that no wage statement was issued because Plaintiff was not classified as an employee and no such statement was required. Defendants deny willfulness, deny injury, and deny any entitlement on behalf of any other person.

61. Defendants deny Paragraph 61, including willfulness. Defendants further state that Plaintiff executed written agreements stating the compensation formula and received transaction-specific communications concerning commissions and Professional Service Fees.

62. PMF denies the allegations in Paragraph 62 of the Complaint. PMF specifically denies that the absence of any notice or wage statement caused Plaintiff any concrete or particularized injury,

and denies that any causal connection exists between the documents alleged and the injury Plaintiff claims.

63. Defendants deny Paragraph 63. Defendants deny that any posting or failure to post at a physical office location caused Plaintiff any injury. Defendants further state that Plaintiff, who alleges he worked remotely from his own home, does not allege that he visited the location where a posting would appear or that any omission caused him injury.

**Willful Violations (¶¶ 64-68)**

64. PMF denies the allegations in Paragraph 64 of the Complaint. Defendants further state that engaging independent sales organizations on terms consistent with the long-standing recognized practice of the industry, as set forth in response to Paragraphs 28 and 68, is not a policy of knowingly violating any law.

65. PMF denies the allegations in Paragraph 65 of the Complaint, including any allegation that PMF disregarded or evaded any recordkeeping requirement or that PMF acted to make proof of Plaintiff's claims difficult.

64. PMF denies the allegations in Paragraph 66 of the Complaint. Conduct consistent with a long-standing recognized industry practice, which Congress has itself treated as a reasonable basis for non-employee classification, is the opposite of knowing violation or reckless disregard. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

65. PMF denies that the existence of other litigation establishes knowledge, willfulness, or any unlawful compensation policy, and denies that PMF failed to take appropriate measures with respect to its compensation practices. PMF lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 67 of the Complaint, which are directed to the collective defined term, and on that basis denies them. Except as so stated, PMF denies the allegations in Paragraph 67 of the Complaint. Defendants further state that

Paragraph 67 does not identify any action in which any court or agency determined that any Defendant misclassified any independent sales organization or its principal.

66. Defendants deny Paragraph 68, including willfulness, and preserve all good-faith and reasonable-grounds defenses. Plaintiff's premise, that PMF has been "in this business for many years," supports the opposite inference: throughout those years, independent sales organizations in this industry have customarily been engaged as independent contractors on commission-only terms, as set forth in response to Paragraph 28. Adhering to the recognized practice of one's industry is evidence of good faith, not of knowing disregard.

**Retaliation (¶¶ 69-92)**

69. PMF admits that it received a letter from Plaintiff's counsel dated on or about July 16, 2025. PMF respectfully refers the Court to that letter for its complete and accurate contents. PMF denies that Plaintiff was an employee and denies the characterizations embedded in Paragraph 69. Except as so admitted, PMF denies the allegations in Paragraph 69 of the Complaint.

70. PMF admits that PMF's Chief Operating Officer sent Plaintiff an e-mail on or about July 23, 2025, and respectfully refers the Court to that communication for its complete and accurate contents. Except as so admitted, PMF denies the allegations in Paragraph 70 of the Complaint.

71. PMF admits that its in-house counsel responded to the correspondence from Plaintiff's counsel and acknowledged receipt. Except as so admitted, PMF denies the allegations in Paragraph 71 of the Complaint.

72. PMF admits that Plaintiff's access to his PMF Google account was restricted on or about August 29, 2025. PMF denies that the restriction was retaliatory, denies that it was imposed because of any protected activity, and denies the characterizations embedded in Paragraph 72. Except as so admitted, PMF denies the allegations in Paragraph 72 of the Complaint.

73. Defendants lack knowledge or information sufficient to form a belief concerning the complete conversation described in Paragraph 73 and therefore deny the allegations. Defendants further state that Paragraph 73 does not identify the individual by name, the entity that engaged that individual, or the authority that person allegedly held over Plaintiff's activity, schedule, or compensation. Except as so stated, Defendants deny the allegations in Paragraph 73.

74. PMF denies the allegations in Paragraph 74 of the Complaint, including any allegation that Plaintiff was unable to perform the activities contemplated by the Agreements, that Plaintiff was constructively discharged, or that Plaintiff was forced to resign.

75. PMF denies the allegations in Paragraph 75 of the Complaint, including any allegation that the account restriction lacked a legitimate basis or was imposed in retaliation for any protected activity.

76. PMF admits that, on or about October 6, 2025, PMF, through counsel, communicated with Plaintiff's counsel concerning the manner in which outbound calls associated with Plaintiff's assigned extension were placed. PMF respectfully refers the Court to that correspondence for its complete and accurate contents. Except as so admitted, PMF denies the allegations in Paragraph 76 of the Complaint.

77. PMF denies the allegations in Paragraph 77 of the Complaint. Defendants further state the facts concerning Plaintiff's use of dialing tools and the outbound calls recorded on his extension set forth in Counterclaim Paragraphs 244 through 253, which are incorporated here.

78. PMF admits that, on or about December 16, 2025, PMF, through counsel, further communicated with Plaintiff's counsel concerning the manner in which outbound calls associated with Plaintiff's assigned extension were placed. PMF respectfully refers the Court to that correspondence for its complete and accurate contents. Except as so admitted, PMF denies the allegations in Paragraph 78 of the Complaint.

79. PMF denies the allegations in Paragraph 79 of the Complaint. Defendants further state the facts set forth in response to Paragraph 77, which are incorporated here.

80. PMF admits that Plaintiff filed the initial Complaint in this action on February 10, 2026, and respectfully refers the Court to that pleading for its complete and accurate contents. Except as so admitted, PMF denies the allegations in Paragraph 80 of the Complaint.

81. Defendants admit that, on June 8, 2026, the pleading docketed at ECF No. 12 was filed and respectfully refer the Court to that pleading for its complete and accurate contents. To the extent this pleading amends, narrows, withdraws, or replaces allegations or claims previously stated, this pleading states Defendants' current position. Except as so admitted, Defendants deny the allegations in Paragraph 81.

82. PMF respectfully refers the Court to ECF No. 12 for its complete and accurate contents. PMF denies Plaintiff's characterization of that pleading, denies that the allegations contained in it were "never disclosed" to Plaintiff, and denies the remaining allegations in Paragraph 82 of the Complaint.

83. PMF denies the allegations in Paragraph 83 of the Complaint.

84. PMF respectfully refers the Court to ECF No. 12 for its complete and accurate contents. PMF denies Plaintiff's characterization of that pleading and denies the allegations in Paragraph 84 of the Complaint.

85. PMF respectfully refers the Court to ECF No. 12 for its complete and accurate contents. PMF denies that it was unaware of the subject matter of its counterclaims prior to service of the Complaint, and denies the remaining allegations in Paragraph 85 of the Complaint. PMF affirmatively states that Plaintiff alleges in Paragraphs 76 and 78 of the Complaint that PMF, through counsel, raised the manner in which outbound calls were placed on or about October 6, 2025 and December 16, 2025, each of which preceded the filing of the initial Complaint on February 10, 2026.

86. PMF denies the allegations in Paragraph 86 of the Complaint, including the allegation that PMF never raised non-compliant dialing or breach of the Policy Manual during Plaintiff's engagement. On August 2, 2023, March 18, 2024, July 26, 2024, and January 27, 2025, PMF sent notices received by Plaintiff directing the removal of do-not-contact merchants from his lists and attaching "pages from the PMF policy manual regarding TCPA rules and email CAN-SPAM requirements that MUST be followed," and Plaintiff acknowledged each in writing. PMF affirmatively states that Plaintiff alleges in Paragraphs 76 and 78 of the Complaint that PMF, through counsel, raised the manner in which outbound calls were placed on or about October 6, 2025 and December 16, 2025.

87. PMF respectfully refers the Court to ECF No. 12 for its complete and accurate contents. PMF denies Plaintiff's characterization of that pleading and denies the allegations in Paragraph 87 of the Complaint. PMF further denies that ECF No. 12 was filed "years after" the conclusion of Plaintiff's engagement, Plaintiff having alleged in Paragraphs 72 through 74 of the Complaint that his engagement concluded in or about August 2025 and in Paragraph 81 of the Complaint that ECF No. 12 was filed on June 8, 2026.

88. PMF denies the allegations in Paragraph 88 of the Complaint, including any allegation that its counterclaims were filed only because Plaintiff commenced this action or that they lack a reasonable factual inquiry. PMF further states that Plaintiff alleges in Paragraphs 76 and 78 of the Complaint that PMF, through counsel, raised the manner in which outbound calls were placed on or about October 6, 2025 and December 16, 2025, each of which preceded the filing of the initial Complaint on February 10, 2026 as alleged in Paragraph 80 of the Complaint.

89. Defendants deny the allegations in Paragraph 89, including any allegation that the counterclaims are pretextual or were pleaded in retaliation for any protected activity, and repeat their response to Paragraph 88. Defendants further state that Plaintiff does not identify, for each

challenged action, the protected activity, the decisionmaker, the Defendant responsible, and the causal connection alleged.

90. PMF denies the allegations in Paragraph 90 of the Complaint, including any allegation that this action is properly maintained as a collective or class action and any allegation of a chilling effect.

91. PMF denies the allegations in Paragraph 91 of the Complaint.

92. PMF denies the allegations in Paragraph 92 of the Complaint.

**Class Allegations (¶¶ 93-98)**

93. Defendants deny Paragraph 93. Defendants further state that Plaintiff, who alleges he performed his activities remotely from his own home beginning in or about April 2022 and only occasionally traveled to the office, does not allege how he observed the roles, agreements, contracting entities, schedules, hours, or compensation of fifty other persons.

94. Defendants deny Paragraph 94 and further state that Plaintiff does not allege the basis of his claimed knowledge concerning other persons' contracting entities, agreements, lead sources, work locations, schedules, duties, merchant-development activities, reporting structures, or compensation, and that Plaintiff alleges he worked remotely from his own home throughout the relevant period.

95. Defendants deny Paragraph 95 and further state that Plaintiff does not allege the basis of his claimed knowledge concerning other persons' hours, schedules, work locations, nonworking intervals, activities, contracting entities, agreements, lead sources, reporting structures, or compensation, and that Plaintiff alleges he worked remotely from his own home throughout the relevant period.

96. Defendants deny Paragraph 96 and further state that participants operated under different agreements, with different PMF entities, through different contracting structures, from

different work locations, with different lead sources, different merchant relationships, different transaction terms, different reporting structures, and different commission and Professional Service Fee allocations. Defendants further state that the ISO trading-floor model involved participant-specific merchant-opportunity ownership, transaction attribution, exclusivity, renewal rights, commission allocations, and transaction-specific splits that are not alleged to have applied uniformly to all persons Plaintiff seeks to represent.

97. PMF denies the allegations in Paragraph 97 of the Complaint.

98. PMF denies the allegations in Paragraph 98 of the Complaint, except states that the name or business name under which an independent sales organization or its representative presents itself to merchants is chosen by that organization or representative, and that the Agreements do not prescribe it. Paragraph 98 does not identify any Defendant, or any person acting on behalf of a Defendant, who selected a name for Plaintiff, and PMF denies that any Defendant did so.

**Class Action Allegations (¶¶ 99-105)**

99. PMF admits that Paragraph 99 purports to define a putative class. PMF denies that the putative class is properly defined, denies that the class definition is ascertainable, denies that "other comparable positions" identifies any definable group, and denies that a class may be certified under Fed. R. Civ. P. 23(a), (b)(2), or (b)(3). PMF further denies that Plaintiff may represent any person whose claims arose before Plaintiff's own engagement commenced, the putative class period alleged in Paragraph 99 beginning on February 10, 2020 and Plaintiff alleging in Paragraph 15 of the Complaint that his own engagement commenced on or about November 29, 2021. Except as so admitted, PMF denies the allegations in Paragraph 99 of the Complaint.

100. PMF denies the allegations in Paragraph 100 of the Complaint, including any allegation that joinder is impracticable, that more than 500 class members exist, or that the identity of putative class members is within PMF's sole control. PMF further states that Plaintiff alleges in Paragraph 93 of the Complaint that he worked with at least fifty other Sales Representatives,

that Plaintiff alleges in Paragraph 100 that the precise number of such persons is unknown, and that Plaintiff alleges in Paragraph 98 that he is unaware of the names of putative members.

101. PMF denies the allegations in Paragraph 101 of the Complaint, including any allegation that Plaintiff's claims are typical or that a class action is superior to other available methods of adjudication.

102. PMF denies the allegations in Paragraph 102 of the Complaint, including any allegation that PMF acted or refused to act on grounds generally applicable to the putative class, and denies that Plaintiff, a former participant, has standing to seek injunctive or declaratory relief.

103. PMF lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Plaintiff's commitment to this action, and on that basis denies them. PMF denies that Plaintiff or his counsel is adequate to represent the putative class. Except as so stated, PMF denies the allegations in Paragraph 103 of the Complaint.

104. PMF denies the allegations in Paragraph 104 of the Complaint, including any allegation that Plaintiff's interests or claims are typical of those of the putative class. Defendants further state that Plaintiff's remote, entity-mediated, transaction-specific participation is not typical of the undefined group he seeks to represent.

105. Defendants deny the allegations in Paragraph 105, including subparagraphs (a) through (j), and deny that the questions identified are capable of common answers or predominate over individualized inquiries concerning contracting entity, contracting counterparty, agreement terms, compensation structure, lead source, merchant source, work location, actual activity, claimed hours, transaction attribution, commission allocation, renewals, and damages. Defendants further state that Plaintiff is subject to unique defenses concerning the identity of his contracting entity, his personally acknowledged premises obligations, his remote and self-directed activity, his individualized merchant-acquisition pathway, his team-specific reporting structure, his merchant-development activities, his negotiations with other independent sales

organizations concerning opportunity ownership, exclusivity, and commission allocation, his transaction-specific splits and renewals, his individualized compensation history, and his individual retaliation theory. Defendants further state that Plaintiff is neither typical nor adequate of the proposed class because those individualized issues and defenses are unique to Plaintiff and are not alleged to apply uniformly to the putative class members.

106. Defendants deny the allegations in Paragraph 106. Defendants specifically deny that the putative collective is properly defined, deny that "other comparable positions" identifies any ascertainable or definable group, and deny that Plaintiff has identified a material unlawful policy or practice common to the proposed collective. Defendants further state that the allegations of the First Amended Complaint describe participants operating under different agreements, through different contracting entities and structures, with different lead sources, merchant-development activities, work locations, reporting structures, and transaction-based compensation arrangements, including transaction attribution, renewal rights, commission allocations, and transaction-specific splits. Defendants further state that Plaintiff's allegations concerning remote work, Indaloop, individualized merchant acquisition, team-specific reporting structures, transaction-specific compensation, and individualized retaliation are not alleged to apply uniformly to the persons Plaintiff seeks to include within the proposed collective.

107. PMF denies the allegations in Paragraph 107 of the Complaint, including subparagraphs (a) through (e). PMF specifically denies that Plaintiff is similarly situated to any putative collective member with respect to any material issue capable of common resolution. PMF further denies subparagraph (e) and denies that the statute of limitations is subject to estoppel or equitable tolling on a classwide or automatic basis, or as to any individual absent claimant-specific proof of reasonable diligence, extraordinary circumstances, and entitlement to such relief. Plaintiff's alleged experience was shaped by a unique combination of remote work,

Indaloop, individualized merchant sourcing, individualized compensation arrangements, team-specific reporting structures, negotiations concerning merchant ownership and commissions, transaction-specific renewals and splits, and an individualized retaliation theory.

**First Cause of Action: Unpaid Minimum Wage Under FLSA (¶¶ 108-114)**

108. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

109. Defendants admit that a written consent to become party plaintiff bearing Plaintiff's name and dated February 10, 2026 was filed with the initial Complaint. Defendants deny that any other person has filed a written consent in this action and deny that the requirements of 29 U.S.C. § 216(b) have been satisfied as to any other person. Except as so admitted, Defendants deny the allegations in Paragraph 109 of the Complaint.

110. PMF denies the allegations in Paragraph 110 of the Complaint, including any allegation that PMF was an employer within the meaning of the FLSA or that PMF employed Plaintiff or any putative collective member.

111. PMF denies the allegations in Paragraph 111 of the Complaint.

112. PMF denies the allegations in Paragraph 112 of the Complaint.

113. PMF denies the allegations in Paragraph 113 of the Complaint, including any allegation of willfulness and any allegation that a three-year limitations period applies.

114. PMF denies the allegations in Paragraph 114 of the Complaint, including any allegation that Plaintiff or any putative collective member suffered damages or is entitled to unpaid wages, liquidated damages, prejudgment interest, attorneys' fees, costs, or any other relief.

**Second Cause of Action: Unpaid Overtime Under FLSA (¶¶ 115-119)**

115. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

116. PMF denies the allegations in Paragraph 116 of the Complaint, including any allegation that PMF was an employer within the meaning of the FLSA or was required to pay Plaintiff or any putative collective member an overtime premium.

117. PMF denies the allegations in Paragraph 117 of the Complaint.

118. PMF denies the allegations in Paragraph 118 of the Complaint, including any allegation of willfulness and any allegation that a three-year limitations period applies.

119. PMF denies the allegations in Paragraph 119 of the Complaint, including any allegation that Plaintiff or any putative collective member suffered damages or is entitled to any relief.

**Third Cause of Action: Unpaid Minimum Wage Under NYLL (¶¶ 120-128)**

120. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

121. PMF denies the allegations in Paragraph 121 of the Complaint, including any allegation that PMF is an employer within the meaning of the NYLL or that PMF employed Plaintiff or any putative class member.

122. PMF denies the allegations in Paragraph 122 of the Complaint.

123. PMF denies the allegations in Paragraph 123 of the Complaint.

124. PMF denies the allegations in Paragraph 124 of the Complaint, and further denies that any posting or failure to post caused Plaintiff or any putative class member any injury.

125. PMF denies the allegations in Paragraph 125 of the Complaint.

126. PMF denies the allegations in Paragraph 126 of the Complaint.

127. PMF denies the allegations in Paragraph 127 of the Complaint, including any allegation of willfulness.

128. PMF denies the allegations in Paragraph 128 of the Complaint, including any allegation that Plaintiff or any putative class member is entitled to unpaid wages, liquidated damages, attorneys' fees, costs, or interest.

**Fourth Cause of Action: Unpaid Overtime Under NYLL (¶¶ 129-134)**

129. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

130. PMF denies the allegations in Paragraph 130 of the Complaint, including any allegation that PMF is an employer within the meaning of the NYLL or that PMF employed Plaintiff or any putative class member.

131. PMF denies the allegations in Paragraph 131 of the Complaint.

132. Defendants deny Paragraph 132 and preserve all good-faith and reasonable-grounds defenses.

133. PMF denies the allegations in Paragraph 133 of the Complaint, including any allegation of willfulness.

134. PMF denies the allegations in Paragraph 134 of the Complaint, including any allegation that Plaintiff or any putative class member is entitled to any relief.

**Fifth Cause of Action: Failure to Provide 195.1 Notice Under NYLL (¶¶ 135-137)**

135. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

136. PMF admits that it did not provide Plaintiff with a Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1(a), and affirmatively states that Plaintiff was not an employee and that no such notice was required. PMF denies that Plaintiff was entitled to any such notice, denies any willfulness, and denies the allegations directed to putative class

members. Except as so admitted, PMF denies the allegations in Paragraph 136 of the Complaint.

137. PMF denies the allegations in Paragraph 137 of the Complaint. PMF specifically denies that Plaintiff or any putative class member sustained a concrete and particularized injury caused by the absence of any notice, denies that Plaintiff has standing to assert the claim pleaded in the Fifth Cause of Action, and denies that Plaintiff or any putative class member is entitled to statutory damages, the statutory maximum, attorneys' fees, costs, or injunctive or declaratory relief.

**Sixth Cause of Action: Failure to Provide 195.3 Wage Statement Under NYLL (¶¶ 138-140)**

138. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

139. PMF admits that it did not provide Plaintiff with wage statements under NYLL § 195.3, and affirmatively states that Plaintiff was not an employee and that no such statements were required. PMF denies that Plaintiff was entitled to any such statements, denies any willfulness, and denies the allegations directed to putative class members. Except as so admitted, PMF denies the allegations in Paragraph 139 of the Complaint.

140. PMF denies the allegations in Paragraph 140 of the Complaint. PMF specifically denies that Plaintiff or any putative class member sustained a concrete and particularized injury caused by the absence of any wage statement, denies that Plaintiff has standing to assert the claim pleaded in the Sixth Cause of Action, and denies that Plaintiff or any putative class member is entitled to statutory damages, the statutory maximum, attorneys' fees, costs, or injunctive or declaratory relief.

**Seventh Cause of Action: Retaliation in Violation of the FLSA and NYLL (¶¶ 141-148)**

141. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

142. PMF admits that Plaintiff, through counsel, sent a demand letter dated July 16, 2025, and that Plaintiff filed the initial Complaint in this action on February 10, 2026. PMF denies the legal characterization that these acts constitute protected activity as to any Defendant not shown to have employed Plaintiff, and denies that Plaintiff was an employee protected by 29 U.S.C. § 215(3). Except as so admitted, PMF denies the allegations in Paragraph 142 of the Complaint.

143. PMF denies the allegations in Paragraph 143 of the Complaint, including any allegation that the restriction of Plaintiff's account access was retaliatory or was imposed with intent to retaliate against Plaintiff for protected activity, as more fully set forth in Defendants' response to Paragraph 72 above.

144. PMF denies the allegations in Paragraph 144 of the Complaint, including any allegation that the counterclaims asserted in ECF No. 12 were filed in response to, or with the intent to retaliate against, Plaintiff's protected activity. PMF affirmatively states that Plaintiff alleges in Paragraphs 76 and 78 of the Complaint that PMF, through counsel, raised the manner in which outbound calls were placed on or about October 6, 2025 and December 16, 2025, both of which preceded the filing of the initial Complaint on February 10, 2026, as more fully set forth in Defendants' responses to Paragraphs 85 through 89 above.

145. PMF denies the allegations in Paragraph 145 of the Complaint, including any allegation that Plaintiff was forced to resign or that any Defendant caused him injury.

146. PMF denies the allegations in Paragraph 146 of the Complaint.

147. PMF denies the allegations in Paragraph 147 of the Complaint.

148. PMF denies the allegations in Paragraph 148 of the Complaint, including any allegation that Defendants' actions constitute retaliation in violation of the FLSA or NYLL.

**Eighth Cause of Action: Retaliation in Violation of the NYLL (¶¶ 149-154)**

149. Defendants repeat their foregoing responses to the extent applicable and deny that Plaintiff is entitled to relief under this cause of action.

150. PMF admits that Plaintiff filed the initial Complaint in this action on February 10, 2026. PMF denies the legal characterizations set forth in Paragraph 150 and denies that Plaintiff was an employee protected by NYLL § 215. Except as so admitted, PMF denies the allegations in Paragraph 150 of the Complaint.

151. PMF denies the allegations in Paragraph 151 of the Complaint, including any allegation that its counterclaims were filed because Plaintiff instituted this action.

152. PMF denies the allegations in Paragraph 152 of the Complaint.

153. PMF denies the allegations in Paragraph 153 of the Complaint.

154. PMF denies the allegations in Paragraph 154 of the Complaint, including any allegation that its conduct constituted retaliation under NYLL § 215(1)(a).

**Response to the Prayer for Relief and Jury Demand**

PMF denies that Plaintiff, the putative Class Members, or the putative Collective Action Members are entitled to any of the relief requested in the Prayer for Relief, including subparagraphs (a) through (n), or to any relief whatsoever. Except as expressly admitted herein, PMF denies each and every allegation of the Complaint not specifically responded to above.

## IV. AFFIRMATIVE DEFENSES

Without assuming the burden of proof on matters where it would not otherwise lie, Defendants assert the following affirmative defenses. Defendants reserve the right to assert additional defenses as discovery proceeds.

**FIRST AFFIRMATIVE DEFENSE**

***(Failure to State a Claim)***

155. The Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**SECOND AFFIRMATIVE DEFENSE**

***(Proper Independent Contractor Classification)***

156. Plaintiff was properly classified as an independent contractor at all relevant times. The written agreements identify the contracting party as an independent contractor, state that neither party has authority to direct or control the day-to-day activities of the other, and state that the contracting party is not an employee, is not entitled to employee benefits, is responsible for its own income taxes, and bears all financial and other obligations of its own business. The economic realities of the relationship, including Plaintiff's operation through Indaloop, LLC, his transaction-contingent commission structure, his participation in the ISO trading-floor model's merchant-opportunity ownership, exclusivity, and split negotiations, and the absence of Defendant-imposed schedule or method control over his remote work, confirm independent-contractor status under the totality-of-circumstances test articulated in Saleem v. Corporate Transp. Group, Ltd., 854 F.3d 131 (2d Cir. 2017), as further set forth in Paragraphs 256 through 261 of the Counterclaims. Compliance obligations that Defendants imposed because federal and state law require them, including the do-not-call and telephone-solicitation requirements of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, are not indicative of control. See Parrish v. Premier Directional Drilling, L.P., 917 F.3d 369, 382 (5th Cir. 2019). Under New York law, which applies a common-law test to classification under the NYLL, Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (2003), relevant considerations include whether the work is customarily done

by a specialist without supervision and whether the parties believed they were creating an employment relationship. Restatement (Second) of Agency § 220(2)(c), (i) (1958). Both favor Defendants: the industry's long-standing recognized practice is to engage independent sales organizations as independent contractors, as set forth in response to Paragraph 28, and the parties documented that understanding in each Agreement.

**THIRD AFFIRMATIVE DEFENSE**

***(Outside Sales Exemption)***

157. Even if Plaintiff were deemed an employee, he is exempt from minimum wage and overtime requirements under the FLSA outside sales exemption, 29 U.S.C. § 213(a)(1), and 29 C.F.R. §§ 541.500–541.504, applying the fair-reading standard of Encino Motorcars, LLC v. Navarro, 584 U.S. 79, 88 (2018). Plaintiff's primary duty was making sales within the meaning of 29 C.F.R. § 541.500(a)(1): obtaining merchant financing applications and closing funded transactions, the only activity for which he was paid. The merchants he sold to were businesses located throughout the United States, not at any Defendant's place of business, and he sold to them by individualized solicitation of each merchant's owner or principal, through his own merchant-application link, his own email campaigns, and his own negotiation of exclusivity and commission splits with other participants, as set forth in the Counterclaims. Plaintiff did not conduct his selling at any Defendant's office: the building access records for PMF's 55 Water Street office reflect no activity on his access card from November 1, 2023 through August 29, 2025. No Defendant chose, leased, furnished, or required the place from which Plaintiff worked. To the extent 29 C.F.R. § 541.502 would treat a location selected and controlled solely by the salesperson as a Defendant's place of business, Defendants contend that the regulation as so applied exceeds the ordinary meaning of “outside salesman” in 29 U.S.C. § 213(a)(1), which is to be given a fair reading, Encino Motorcars, 584 U.S. at 88–89,

and whose meaning the Court determines independently, Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). The industry's long-standing practice of engaging commission-only independent sales organizations to sell outside the funder's premises informs the ordinary meaning of the exemption, as it did in Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 157–58, 164–65 (2012). The phrase "customarily and regularly engaged away from the employer's place or places of business" did not originate in 29 C.F.R. § 541.701, which first defined it in 2004 as a measure of frequency. It has been part of the Department's delimitation of the outside-salesman exemption since the original regulations adopted under the 1938 Act, and at that time "customarily" carried its ordinary meaning of according to custom or established usage, as well as habitually. Read in that sense, the delimitation asks whether a salesperson's selling away from the employer's premises is the established practice of the occupation, and the established practice of the independent sales organizations that sell merchant financing is to sell to merchants from wherever the salesperson chooses, not from the funder's premises. To the extent 29 C.F.R. § 541.701 would reduce the phrase to a count of weekly frequency without regard to that meaning, it does not govern the construction of the statutory term. *Loper Bright*, 603 U.S. at 394–95.

158. The outside-sales exemption, 29 U.S.C. § 213(a)(1), must be construed according to its ordinary meaning at the time of enactment, applying the "fair reading" standard the Supreme Court requires of FLSA exemptions. *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018); *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014). "Outside salesman" was not a term Congress coined in 1938; it named an established commercial occupation, and statutory terms that carry settled meaning in the law and commerce of their time are read to incorporate that meaning. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992). That fair-reading methodology is consonant with the canon that statutes invading the common law are read in light of long-established common-law principles, including the freedom of

commercial parties to contract for the sale of their services on commission, which the FLSA modified but did not abolish. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

**FOURTH AFFIRMATIVE DEFENSE**

***(Reservation as to Additional Statutory Exemptions)***

159. Without conceding employee status, Defendants reserve and assert any additional FLSA or NYLL statutory exemption that discovery may show applies to Plaintiff's compensation structure and duties.

**FIFTH AFFIRMATIVE DEFENSE**

***(Failure to Allege Compensable Work)***

160. The Complaint fails to plausibly allege that Plaintiff performed compensable work within the meaning of the FLSA or NYLL. Plaintiff cannot invoke the burden-shifting framework of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which presupposes an employer that failed to record work it controlled: Plaintiff set his own hours, worked remotely on devices of his choosing, and does not allege that any Defendant recorded, required, or knew of the hours he claims, while PMF's contemporaneous system records reflect the activity that did occur. As set forth in Defendants' responses above, Plaintiff does not identify, for any workweek, the daily start and end times, activities, locations, or any person who observed or was informed of the hours he claims.

**SIXTH AFFIRMATIVE DEFENSE**

***(Failure to Distinguish Compensable from Non-Compensable Time)***

161. Plaintiff has failed to distinguish compensable work time from non-compensable time, rendering his claims barred or subject to dismissal for failure to adequately plead the existence and extent of compensable hours worked.

**SEVENTH AFFIRMATIVE DEFENSE**

***(Good Faith; No Liquidated Damages)***

162. Defendants acted at all times in good faith, with reasonable grounds for believing their classification and compensation practices complied with the FLSA and NYLL, precluding or substantially limiting any award of liquidated damages. 29 U.S.C. § 260; NYLL § 663(1). This good-faith belief rested on: (i) Plaintiff's operation through Indaloop, LLC; (ii) a commission-only compensation structure; (iii) the written agreements' operative terms providing that the ISO or Rep is an independent contractor and not an employee; (iv) the long-standing recognized practice of a significant segment of the small-business-financing industry of engaging independent sales organizations and their principals as independent contractors on commission-only terms, which is the practice Congress recognized as a reasonable basis for non-employee treatment in Section 530(a)(2)(C) of the Revenue Act of 1978, cf. 26 U.S.C. § 3508(a), (b)(2) (commission-based salespersons working under written contracts providing that they are not employees are not employees for federal employment-tax purposes), and the kind of long-standing industry practice the Supreme Court treated as significant in construing the FLSA's salesman exemption in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 157–58 (2012); (v) Plaintiff's own self-identification using titles other than "Sales Representative" in his compliance correspondence; and (vi) the absence of any wage complaint by Plaintiff during the more than three and a half years of the relationship preceding his counsel's letter of July 16, 2025. Plaintiff cannot meet the willfulness standard of *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Although Section 530 and 26 U.S.C. § 3508 govern federal

employment taxes rather than FLSA or NYLL liability, the industry practice they recognize is objective evidence of the reasonableness and good faith of Defendants' belief for purposes of 29 U.S.C. § 260 and NYLL § 663(1), and it negates willfulness under 29 U.S.C. § 255.

**EIGHTH AFFIRMATIVE DEFENSE**

***(Statute of Limitations)***

163. Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations, including the two-year limitations period for non-willful FLSA violations and the three-year period for alleged willful violations, 29 U.S.C. § 255, and the six-year limitations period for NYLL wage claims, NYLL § 198(3).

**NINTH AFFIRMATIVE DEFENSE**

***(Offset and Recoupment)***

164. Any recovery by Plaintiff must be offset and reduced by all commissions, advances, draws, or other compensation paid to Plaintiff or to Indaloop during the period at issue, as well as by all damages arising from the conduct alleged in the Counterclaims set forth below.

**TENTH AFFIRMATIVE DEFENSE**

***(Faithless Servant Doctrine)***

165. Plaintiff's claims for compensation are barred in whole or in part under New York's faithless servant doctrine, as set forth more fully in Count Four of the Counterclaims below. Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200-201 (2d Cir. 2003).

**ELEVENTH AFFIRMATIVE DEFENSE**

***(In Pari Delicto and Unclean Hands)***

166. To the extent Plaintiff's FLSA and NYLL claims are legal in nature, Defendants assert the doctrine of in pari delicto as a bar to recovery arising from the conduct described in the Counterclaims below. To the extent any claim is equitable in nature, Plaintiff's claims are further barred by the doctrine of unclean hands.

**TWELFTH AFFIRMATIVE DEFENSE**

***(Estoppel and Ratification)***

167. Plaintiff is estopped to assert employee status by reason of his and Indaloop's conduct in signing the written agreements in Indaloop's capacity as contracting party, accepting commission payments routed to Indaloop over a multi-year period without asserting employee status during the engagement, and self-identifying in contemporaneous compliance correspondence using titles other than "Sales Representative." Indaloop, LLC and Plaintiff ratified the independent-contractor relationship by accepting and retaining the compensation and draws paid under the Agreements.

**THIRTEENTH AFFIRMATIVE DEFENSE**

***(More Definite Statement)***

168. The Complaint is vague and ambiguous with respect to the entity-specific, temporal, and factual basis of Plaintiff's claims such that Defendants are entitled to a more definite statement under Fed. R. Civ. P. 12(e), as further set forth in the Affirmative Allegations Material to Threshold Determination below.

**FOURTEENTH AFFIRMATIVE DEFENSE**

***(Opposition to Class and Collective Certification)***

169. Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23(a) and (b)(3) or 29 U.S.C. § 216(b), for the reasons set forth in Defendants' responses to Paragraphs 99 through 107 above, which Defendants incorporate by reference. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011); Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir. 2015).

**FIFTEENTH AFFIRMATIVE DEFENSE**

***(Lack of Standing on NYLL § 195 Claims)***

170. Plaintiff lacks Article III standing to pursue any NYLL § 195 wage-notice or wage-statement claim because he has not pleaded concrete, particularized injury arising from any alleged notice or statement defect. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).

**SIXTEENTH AFFIRMATIVE DEFENSE**

***(No Retaliation; Pre-Existing, Independently Discovered Conduct)***

171. Plaintiff's Seventh and Eighth Causes of Action, alleging that Defendants' counterclaims constitute retaliation, are barred because the conduct underlying those counterclaims was raised by Defendants, through counsel, on October 6, 2025 and December 16, 2025 — each preceding the filing of the initial Complaint on February 10, 2026, as Plaintiff himself alleges. Defendants' concerns concerning the manner in which outbound calls were placed thus predate and are independent of Plaintiff's protected activity, negating any inference that the counterclaims were filed because of that activity. The counterclaims arise out of the same written agreements and the same course of dealing on which Plaintiff's claims are based, Defendants were entitled under Fed. R. Civ. P. 13 to assert them in this action (and, to the extent they are compulsory, were required to), and they have a reasonable basis in fact and law in the records described in the Counterclaims. The prosecution of a reasonably based claim is

not actionable retaliation. See *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743–44 (1983).

**SEVENTEENTH AFFIRMATIVE DEFENSE**

***(Legitimate, Non-Retaliatory Basis for Account Restriction)***

172. The restriction of Plaintiff's account access was based on legitimate, non-retaliatory business and security considerations unrelated to any protected activity.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

***(Failure to Mitigate)***

173. Plaintiff's recovery, if any, is barred or reduced by his failure to mitigate his damages.

**NINETEENTH AFFIRMATIVE DEFENSE**

***(No Actual or Constructive Knowledge of the Hours Claimed)***

174. No Defendant suffered or permitted the hours Plaintiff claims. Liability for hours worked extends only to work the employer knew or had reason to know was being performed. 29 U.S.C. § 203(g); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Plaintiff set his own hours; worked from his own home on devices of his choosing; placed his calls through the Zoom Phone mobile application rather than from any PMF office; did not enter the overwhelming majority of the numbers he called into PMF’s CRM; did not submit his lead and distribution lists for do-not-call scrubbing as the Policy Manual required; and did not report his hours to any Defendant. Activity conducted outside the systems and workflow the Agreements required was not activity any Defendant knew of, required, or could observe, and it cannot support a claim for hours worked. Calls placed before 8:00 a.m. or after 9:00 p.m. local time at the called party's location, and calls placed to numbers never submitted for scrubbing, were

prohibited by the Agreements and the Policy Manual because such calls carry regulatory and litigation risk that PMF does not tolerate, and PMF directed Plaintiff in writing to follow those requirements. Activity of that kind was neither suffered nor permitted by any Defendant. The span of time between the first and last call Plaintiff placed on any day marks only when those calls occurred; it is not a measure of hours worked, and the call records do not show what, if anything, Plaintiff did between calls.

**TWENTIETH AFFIRMATIVE DEFENSE**

***(Reservation of Rights)***

175. Defendants reserve the right to assert such additional affirmative defenses as may be revealed through discovery or further investigation.

## V. COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13(h) and 19, Defendants and Counterclaim-Plaintiffs Premium Merchant Funding 18, LLC and Premium Merchant Funding One, LLC join Ryan Roach and Indaloop, LLC as Counterclaim-Defendants and assert the following counterclaims.

### Nature of Counterclaims

176. Counterclaim-Plaintiffs assert these counterclaims based on conduct and records that predate this litigation. As set forth in the Sixteenth Affirmative Defense above, Counterclaim-Plaintiffs, through counsel, raised the manner in which outbound calls associated with Plaintiff's assigned extension were placed on October 6, 2025 and December 16, 2025, both before Plaintiff filed the initial Complaint on February 10, 2026. These counterclaims rest on that pre-existing, independently discovered conduct and are not asserted because Plaintiff filed this lawsuit.

**Parties and Background**

177. Counterclaim-Plaintiff Premium Merchant Funding 18, LLC is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in the State of New York as a foreign limited liability company. It is the PMF party identified in the Independent Sales Contractor Agreement dated December 21, 2021 (the "2021 Agreement"), which identifies "Ryan Roach, INDALOOP LLC" as the ISO, a true and correct copy of which will be produced in discovery.

178. Counterclaim-Plaintiff Premium Merchant Funding One, LLC is a domestic limited liability company organized under the laws of the State of New York. It is a party to the Premium Merchant Funding ISO Agent Sales Agreement dated April 20, 2023 (the "2023 Agreement," and together with the 2021 Agreement, the "Agreements"), which identifies Ryan Roach as "Rep" and also identifies Indaloop, LLC, a true and correct copy of which will be produced in discovery.

179. Counterclaim-Defendant Ryan Roach is the named Plaintiff in this action and, at all relevant times, operated as principal of Counterclaim-Defendant Indaloop, LLC.

180. Counterclaim-Defendant Indaloop, LLC is a limited liability company with its principal place of business in the Bronx, New York. Indaloop is the contracting entity of record on the 2021 agreement and is identified in the 2023 agreement materials. Indaloop is joined as a party pursuant to Fed. R. Civ. P. 13(h) and 19 as an entity whose joinder is required for complete relief and whose interests are central to the counterclaims asserted herein.

181. Counterclaim-Plaintiffs maintained a lead-source and compliance program under which lead lists, whether of telephone numbers or email addresses, were required to be submitted for scrubbing against Counterclaim-Plaintiffs' internal do-not-contact and unsubscribe lists and applicable Do Not Call registries before use, as set forth in Paragraphs 183 through 190.

182. Counterclaim-Plaintiffs' contemporaneous records reflect that the substantial bulk of Plaintiff's outbound calls and email solicitations were directed to contacts that do not appear in the CRM records associated with Plaintiff's account, and were therefore outside the do-not-call screening performed within that system, as set forth in Paragraphs 191 through 207. Counterclaim-Plaintiffs reserve the right to amend these counterclaims as discovery proceeds.

183. The Telephone Consumer Protection Act and its implementing regulations prohibit telephone solicitations to residential telephone subscribers whose numbers are listed on the National Do-Not-Call Registry, 47 C.F.R. § 64.1200(c)(2); require any person or entity making telephone solicitations to maintain written procedures for, and to record and honor, a company-specific do-not-call list, 47 C.F.R. § 64.1200(d); and prohibit telephone solicitations before 8:00 a.m. or after 9:00 p.m. local time at the called party's location, 47 C.F.R. § 64.1200(c)(1). A defendant that has "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations" has an affirmative defense; each violation otherwise carries statutory damages of up to $500, which may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)(i).

184. Section 3 of the 2021 Agreement required the ISO to perform its obligations "in accordance with the policies and guidelines provided by PMF." Section 21 of the 2023 Agreement required the Rep to "comply with all policies, procedures, and guidelines provided, including but not limited to those contained within this ISO agreement, the PMF Policy Manual, the PMF Training Manual, and any additional policies that may be announced while this agreement is in effect," and provides that "[a]ny violations of those policies are a material breach of this agreement."

185. Since at least 2018, the PMF Policy Manual has required compliance with the Telephone Consumer Protection Act, stating: "YOU MUST COMPLY WITH ALL

REQUIREMENTS OF THE TCPA." The current version provides that "All PMF ISOs, Partners, and Employees must Comply With All Requirements Of The TCPA."

186. The Policy Manual provides that "[a]ny and all lead lists must be sent to [a designated address] for scrubbing against Do Not Contact and Unsubscribe lists BEFORE being used," and that "[t]his applies to both phone number and email lists."

187. The Policy Manual provides that "Lead lists MUST be scrubbed every two weeks," and that "[i]f you are unsure of whether or not a list has been scrubbed, always double-check with the person providing them to you, and if scrubbing cannot be confirmed, scrub them again."

188. The Policy Manual directs that "Do Not Contact" requests be forwarded to [a designated do-not-contact mailbox] and that leads in MyRM be tagged "Do Not Call."

189. The Policy Manual imposes fines, which "may be deducted from commission or any other payable," and which "are intended to incentivize agents and their respective team leaders to ensure that they are scrubbing their leads and adding contacts to the opt out and block lists."

190. Regardless of the source of any lead, the Agreements and the Policy Manual placed on the ISO or Rep the obligation to submit each lead list, whether of telephone numbers or email addresses, for scrubbing before use and to re-scrub it every two weeks.

191. On August 2, 2023, March 18, 2024, July 26, 2024, and January 27, 2025, Counterclaim-Plaintiffs sent notices, received by Plaintiff at his PMF-associated email account, directing that "any person you call or email that requests to be removed from your list should be immediately deleted from your list" and reported to the designated do-not-contact mailbox so it can be removed from all lists, and attaching "pages from the PMF policy manual regarding TCPA rules and email CAN-SPAM requirements that MUST be followed."

192. Plaintiff replied in writing to each notice: "Will do." (August 2, 2023); "Got it, removed." (March 18, 2024); "Confirmed , I haven't had any contact with this merchant" (July 26, 2024); and "Confirmed" (February 6, 2025).

193. Between December 1, 2021 and November 1, 2024, Plaintiff addressed at least 88 emails to the designated do-not-contact mailbox, none for scrubbing.

194. Counterclaim-Plaintiffs assigned Plaintiff a Zoom Phone extension. From March 2024, Plaintiff's email signature listed a PMF-associated office number and a mobile number.

195. Between May 30, 2023 and May 27, 2025, Counterclaim-Plaintiffs' Zoom Phone records reflect 80,575 outbound calls placed by the Zoom Phone extension Counterclaim-Plaintiffs assigned to Plaintiff ("Plaintiff's extension"), of which 50,311 were placed directly from Plaintiff's extension and 30,264 were presented through Counterclaim-Plaintiffs' auto-receptionist lines with Plaintiff's extension as the placing extension. Those calls were made to 35,386 distinct telephone numbers, and 59,784 of them connected.

196. Of the outbound calls placed by Plaintiff's extension between May 2023 and March 2025, none originated from a Zoom desktop client and fewer than one percent originated from a deskphone at any PMF office; the remainder originated from the Zoom Phone application on an iOS device.

197. The iOS device from which those calls were placed was Plaintiff's personal iPhone, which Counterclaim-Plaintiffs did not issue and did not control.

198. Of the 35,386 distinct telephone numbers called from Plaintiff's extension, 390 appear in the CRM records associated with Plaintiff's account.

199. Contacts held outside Counterclaim-Plaintiffs' CRM were not subject to the do-not-call flagging performed within MyRM, and could be screened against Counterclaim-Plaintiffs' internal and national do-not-call data only if Plaintiff submitted them for scrubbing, as the Policy Manual required.

200. Not fewer than 1,900 of the calls described in Paragraph 195, of which not fewer than 1,400 connected, were placed before 8:00 a.m. or after 9:00 p.m. in the time zone of the called

number's area code, whichever United States time zone is used to read the times recorded in the Zoom Phone records.

201. Counterclaim-Plaintiffs maintained a centralized do-not-call list administered through the DNC mailbox, blocked listed numbers and addresses in their Zoom Phone and email systems, flagged do-not-call contacts in their MyRM platform, maintained a complaint-tracking record, and directed representatives in writing to follow these procedures. A call placed outside those procedures and contrary to those directions nonetheless exposes Counterclaim-Plaintiffs to claims by called parties who contend that the call was placed on Counterclaim-Plaintiffs' behalf, including claims for (a) per-call statutory damages, 47 U.S.C. § 227(c)(5); (b) liability under agency principles, see *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016); (c) the cost of defending individual and putative class actions, including the cost of establishing the defense available under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)(i); and (d) regulatory inquiry.

202. The exposure described in Paragraph 201 is not hypothetical. On August 1, 2025, Mulholland v. Premium Merchant Funding One, LLC, No. 8:25-cv-01711-MRA-JDE (C.D. Cal.), was filed against Counterclaim-Plaintiff Premium Merchant Funding One, LLC, asserting claims under the Telephone Consumer Protection Act.

203. Plaintiff's extension called a telephone number in the 714 (Orange County, California) area code that is associated with the plaintiff in that action (the "Mulholland Number") on October 22, 2024 (canceled); on January 14, 2025 (connected, 22 seconds); and three times on April 7, 2025, twice connecting. Each of those calls originated from the Zoom Phone mobile application, rather than from a deskphone at any PMF office. The October 22, 2024 call followed the March 18, 2024 and July 26, 2024 notices described in Paragraph 191; the April 7, 2025 calls followed the January 27, 2025 notice.

204. The January 14, 2025 call to the Mulholland Number connected before 8:00 a.m. Pacific time.

205. Plaintiff's PMF email account sent marketing email to an address associated with the plaintiff in that action by BCC to 68 recipients on October 16, 2024; addressed to her individually on October 22, 2024; and by blind copy to 153 recipients on March 18, 2025.

206. The 68 recipients of the October 16, 2024 email appear in the same order within the 153 recipients of the March 18, 2025 email, no recipient was removed in the interval, and 151 of the 153 recipient addresses do not appear in the CRM records associated with Plaintiff's account. Plaintiff did not submit either distribution list for scrubbing.

207. Counterclaim-Plaintiffs do not allege that Plaintiff's conduct caused the filing of the Mulholland action, and the merits of that action are not before this Court. Counterclaim-Plaintiffs allege only that the category of regulatory and litigation exposure the scrubbing requirements were designed to prevent has materialized in a filed action against a Counterclaim-Plaintiff, and that the records reflect contact activity from Plaintiff's assigned systems, drawn from a distribution list maintained outside Counterclaim-Plaintiffs' CRM, directed to the contact information associated with that action. Nor do Counterclaim-Plaintiffs allege or admit that any call or message described in these Counterclaims violated 47 U.S.C. § 227 or 47 C.F.R. § 64.1200. Whether any particular call did so depends on facts the call records do not establish, including whether the called number was a residential line, whether it was listed on the National Do-Not-Call Registry, whether the called party had an established business relationship with, or had given permission to, the caller, and the called party's actual location. The obligations Plaintiff breached are contractual. They exist because calls of this kind carry regulatory and litigation risk that Counterclaim-Plaintiffs do not tolerate, and when Counterclaim-Plaintiffs learn of such activity they act to stop it, as they did through the written notices described in Paragraph 191.

## COUNT ONE — BREACH OF CONTRACT (Against Indaloop, LLC and Ryan Roach)

208. Counterclaim-Plaintiffs repeat and reallege each preceding paragraph, and Paragraphs 228 through 273 below, as if fully set forth herein.

209. The Agreements are valid and enforceable written contracts between Counterclaim-Plaintiffs and Counterclaim-Defendants and, at all relevant times, remained in full force and effect. Ryan Roach executed the 2021 Agreement for the ISO identified as "Ryan Roach, INDALOOP LLC," without designating a representative capacity, and executed the 2023 Agreement as the "Rep."

210. Counterclaim-Plaintiffs performed their obligations under the Agreements, including providing access to platform sales systems, lead information, and commission payments on approved, funded transactions in accordance with the parties' agreed compensation structure.

211. Under Section 3 of the 2021 Agreement and Section 21 of the 2023 Agreement, Counterclaim-Defendants were required to conduct all sales and promotional activity in accordance with the policies and guidelines provided by Counterclaim-Plaintiffs, including the Policy Manual provisions set forth in Paragraphs 185 through 189, which require compliance with the Telephone Consumer Protection Act and its implementing regulations, 47 C.F.R. § 64.1200, and the submission of every lead list for scrubbing before use.

212. Counterclaim-Defendants materially breached the Agreements by failing to submit the lead and distribution lists used in Plaintiff's calling and email solicitation for scrubbing before use, and by directing outbound calls and solicitations to contacts outside Counterclaim-Plaintiffs' do-not-call screening, as set forth in Paragraphs 191 through 206.

213. As a direct and proximate result of these breaches, Counterclaim-Plaintiffs have sustained damages, including exposure to regulatory and third-party liability arising from calls and solicitations placed outside the required scrubbing procedures and the cost of investigating

and remediating the breach, in an amount to be determined at trial. Counterclaim-Plaintiffs further seek their reasonable attorneys' fees and costs to the extent permitted under the Agreements and applicable law.

**COUNT TWO — CONTRACTUAL INDEMNIFICATION (Against Indaloop, LLC and Ryan Roach)**

214. Counterclaim-Plaintiffs repeat and reallege each preceding paragraph, and Paragraphs 228 through 273 below, as if fully set forth herein.

215. Section 7 of each Agreement provides that the ISO or Rep "shall indemnify and hold PMF free and harmless from any and all claims, damages or lawsuits (including reasonable attorneys' fees) arising out of negligence or malfeasance acts of [the ISO or Rep], its employees or its agents."

216. The conduct described in Count One constitutes negligence or malfeasance within the meaning of Section 7.

217. Counterclaim-Plaintiffs are entitled to indemnification from Counterclaim-Defendants for claims, damages, and lawsuits asserted by third parties arising from that conduct, including reasonable attorneys' fees incurred in defending them, in an amount to be determined at trial. Counterclaim-Plaintiffs' attorneys' fees in this action are sought under the prevailing-party provisions of Section 22 of the 2021 Agreement and Section 19 of the 2023 Agreement.

**COUNT THREE — DECLARATORY JUDGMENT OF INDEPENDENT-CONTRACTOR STATUS (Against Roach and Indaloop, LLC)**

218. Counterclaim-Plaintiffs repeat and reallege each preceding paragraph, and Paragraph

219. through 273 below, as if fully set forth herein.

220. An actual controversy exists between the parties concerning the legal characterization of the contracted relationship. Counterclaim-Plaintiffs contend the relationship was independent-contractor in character at all times; Counterclaim-Defendants contend otherwise.

221. Under 28 U.S.C. § 2201, Counterclaim-Plaintiffs are entitled to a declaratory judgment that: (a) Indaloop, LLC was a contracting party with Counterclaim-Plaintiffs under the written agreements; (b) the contracted relationship was that of independent contractor, as those agreements expressly provide; (c) the FLSA's employee definition is not satisfied under the factors articulated in Saleem v. Corporate Transp. Group, Ltd., 854 F.3d 131 (2d Cir. 2017); and (d) no employment-based wage-and-hour or recordkeeping obligation attached to Counterclaim-Plaintiffs as a result of the contracted relationship.

**COUNT FOUR — FAITHLESS SERVANT AND FORFEITURE OF COMPENSATION (Against Roach and Indaloop, LLC)**

222. Counterclaim-Plaintiffs repeat and reallege each preceding paragraph, and Paragraphs 228 through 273 below, as if fully set forth herein.

223. At all relevant times, Roach acted as an agent and owed Counterclaim-Plaintiffs duties of loyalty, fidelity, and honest dealing. Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003).

224. Roach breached these duties by directing outbound calling and email solicitation to contacts he did not submit for scrubbing, contrary to the policies he acknowledged in writing, as described in Paragraphs 183 through 207.

225. Under New York's faithless servant doctrine, an agent who engages in pervasive disloyalty forfeits the right to compensation paid during the period of disloyalty, regardless of whether the principal suffered actual damages. Phansalkar, 344 F.3d at 200-201. Counterclaim-

Plaintiffs are entitled to disgorgement and forfeiture of compensation paid to Indaloop during the period of disloyalty, in an amount to be determined at trial.

226. In the alternative, Section 18 of the 2021 Agreement provides that "the failure of the ISO to comply with any of the terms, provisions, covenants, or conditions of this Agreement" is a material breach, upon which the "ISO shall forfeit any and all commissions that are due or may come due in the future and shall be held liable for all damages suffered by Merchant or PMF as a result of such breach, including loss of investment, costs of litigation, recovery, legal fees, and reputational harm." Counterclaim-Plaintiffs are entitled to that forfeiture and those damages as to the period governed by the 2021 Agreement.

227. Counterclaim-Plaintiffs reserve the right to seek leave to amend these Counterclaims and to add additional parties upon the identification, through discovery, of any third party that supplied lead lists, automation tools, dialer infrastructure, or other services material to the breaches alleged, and that may be jointly or severally liable for the resulting exposure to Counterclaim-Plaintiffs.

**Affirmative Allegations Material to Threshold Determination (Part of the Counterclaims; Response Required)**

228. The allegations in Paragraphs 228 through 273, including Paragraphs 235 through 237, 242 through 253, and 256 through 261, are made as part of these Counterclaims and are incorporated into each Count above. Each requires a response under Fed. R. Civ. P. 8(b). Under Fed. R. Civ. P. 8(b)(6), any such allegation that is not denied is admitted, and a denial must fairly respond to the substance of the allegation, Fed. R. Civ. P. 8(b)(2), specifying the part admitted and denying only the rest, Fed. R. Civ. P. 8(b)(4).

229. The First Amended Complaint attributes agreements, systems, leads, payments, monitoring, supervision, account restriction, and employment to three separately named Defendants without identifying which entity performed each act.

230. The December 21, 2021 agreement identifies Premium Merchant Funding 18, LLC as the PMF party in its notice provision, identifies Indaloop, LLC as the ISO, bears the DocuSign signature of Ryan Roach above the typed names "Ryan Roach" and "INDALOOP LLC", and uses the name "Premium Merchant Funding LLC" in the preamble as a drafting error in the use of the Premium Merchant Funding trade name.

231. The April 20, 2023 agreement identifies Premium Merchant Funding One, LLC as the PMF party, names Ryan Roach as "Rep," and also identifies Indaloop, LLC. It bears the DocuSign signature of Ryan Roach on the line captioned "Rep Name and Signature," and the signature of PMF's Chief Operating Officer above the printed words "Premium Merchant Funding" followed by his name and the title "COO."

232. Plaintiff does not allege which Defendant employed him during each period or under what agreement.

233. Plaintiff formed Indaloop, LLC, filed its formation documents, and paid the associated fee. Payments were routed to the account associated with Indaloop, LLC, and a 2022 Form 1099-NEC was issued by Premium Merchant Funding 18, LLC to Indaloop, LLC.

234. Defendants have no knowledge of and no access to Indaloop's internal operations, management, staffing, records, or arrangements with Plaintiff or with any person Indaloop engaged.

235. Plaintiff alleges he performed his activities remotely from his own home beginning in or about April 2022 and only occasionally traveled to a PMF office.

236. Plaintiff set his own hours and his own place of work. No Defendant scheduled, recorded, or approved his working time.

237. The building access records for PMF's 55 Water Street office reflect no activity on Plaintiff's access card from November 1, 2023 through August 29, 2025.

238. PMF's Zoom Phone records for May 30, 2023 through May 27, 2025 reflect outbound calls from Plaintiff's extension on 500 days, of which 19 were Saturdays or Sundays.

239. Plaintiff does not allege who set his daily start and end times while he worked remotely, who observed his remote activity, or how his remote time was measured.

240. Access records reflect 56 recorded ISO-portal sessions by Plaintiff during the period for which such records exist, originating from multiple internet protocol addresses and from devices neither owned nor controlled by Defendants.

241. Outbound calls associated with Plaintiff's assigned extension were placed, almost without exception, through the Zoom Phone mobile application rather than from a deskphone at any PMF office, to telephone numbers almost none of which appear in the CRM records associated with Plaintiff's account, as set forth in Paragraphs 194 through 200.

242. Plaintiff had his own merchant-application link, carrying his referral identifier, through which a merchant could apply directly and have the application recorded in PMF's CRM under that identifier. Plaintiff placed the link in his outbound email, including in his email signature: "pmfus.com/apply-now/RROACH" appears in 418 messages sent from his PMF email account between December 2, 2021 and March 16, 2022; "myrmapp.com/apply-now/rroach" in 10,578 messages sent between December 16, 2021 and July 3, 2025; and "apply.myrmapp.com/multi-step-apply/rroach" in 63 messages sent between June 25, 2025 and August 1, 2025.

243. PMF made lead batches available to participants in the Program. Participants were free to work those leads or to develop their own merchant prospects, and Plaintiff did both. Between December 2023 and June 2025, Plaintiff's PMF email account sent at least 523 messages each addressed by blind copy to ten or more recipients, reaching 24,872 distinct email addresses, and of the 35,386 distinct telephone numbers called from his extension between May 2023 and May 2025, 390 appear in the CRM records associated with his account.

244. The person Plaintiff identifies as his "Team Leader," the participant Plaintiff identifies in Paragraph 30 of the Complaint as his "Team Leader", was himself a participant in the Program. The Indaloop Payout Sheet records 86 entries, involving 24 merchants funded between December 3, 2021 and March 4, 2025, on which Plaintiff and that participant divided commission and Professional Service Fee on

stated percentages, for example, 25 percent of the commission to Plaintiff and 5 percent to that participant on one transaction, and 15 percent to each on another.

245. On June 25, 2024, PMF notified participants in the Program in writing that an auto dialer was being provided through Orum, stating: "I hope that everyone is utilizing the new auto dialer provided through Orum effectively."

246. On November 2, 2024, Plaintiff forwarded that notice from his PMF-associated email account to a personal email address.

247. On April 30, 2025, Plaintiff sent an email titled "ERROR TRYING TO USE MYRM DIALER," stating: "Working from home, trying to use my headphones to call directly from myrm, but it's giving an error."

248. On May 7, 2025, Plaintiff sent PMF an email titled "Please CAN I HAVE MY ORUM BACK," stating of Orum: "I was using it."

249. PMF's Zoom Phone records for Plaintiff's extension record 80,575 outbound calls between May 30, 2023 and May 27, 2025, of which 59,784 connected, 18,138 were canceled before connecting, 2,616 failed, and 37 were not completed because international calling was disabled.

250. Of those 80,575 calls, the Zoom Phone records reflect that 73,867 were placed from the Zoom Phone iPhone application, 6,383 from the Zoom Phone Windows desktop application, 322 from a desk phone, and 3 from both the iPhone and Windows applications. The first call recorded as placed from the Windows desktop application was placed on April 17, 2025.

251. The Zoom Phone records reflect as many as 99 outbound calls from Plaintiff's extension within a single clock hour, and as many as six within a single minute.

252. The Zoom Phone records reflect, for each call, when it started, its result, and its duration. They do not reflect whether Plaintiff dialed each call himself or used a dialing system to place it.

253. Plaintiff knows whether, when he placed the calls described in Paragraphs 248 through 250, he dialed each call himself or used a dialing system that placed calls and connected him only after a recipient answered.

254. Each outbound call recorded on Plaintiff's extension was placed from that extension, and Plaintiff is responsible under the Agreements and the Policy Manual for each such call, including its compliance with 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

255. Merchant opportunities could arise through more than one pathway, including information provided through the Program, referrals, renewals, and merchant contacts developed by the participant.

256. Plaintiff engaged in negotiations with other independent sales organizations concerning merchant-opportunity ownership, exclusivity, transaction attribution, renewal rights, commission allocations, and transaction-specific splits within the ISO trading-floor model.

257. Between December 3, 2021 and July 24, 2025, Indaloop, LLC received commission or Professional Service Fee credit on 142 transaction entries involving 58 merchants, funded by 31 different funders.

258. On 112 of those entries, Plaintiff shared the transaction with one or more other participants, allocated between him and 18 different participants.

259. Those allocations were stated transaction by transaction, with the commission share and the Professional Service Fee share set separately; for example, on a transaction funded December 3, 2021, the recorded allocation divided the commission 15 percent to one participant, 7.5 percent to Plaintiff, and 7.5 percent to a third participant, and divided the Professional Service Fee 12.5 percent, 6.25 percent to Plaintiff, and 6.25 percent, respectively.

260. Plaintiff's share of commission ranged across 18 different percentages, from 6% to 32.5%, and his share of Professional Service Fees across 10 different percentages, from 2.5% to 27.5%.

261. Advancement between compensation tiers was measured by, among other things, the participant's percentage "ownership of the file."

262. Indaloop, LLC received 62 draws against its commission balance between December 24, 2021 and August 4, 2025, totaling $83,021.57.

263. Plaintiff does not allege which merchants were assigned to him, which he developed himself, which he declined, or whether he or Indaloop solicited or performed merchant-financing activity outside the Program.

264. The agreements calculate compensation as stated percentages of commission and Professional Service Fee amounts received by the applicable PMF entity in connection with qualifying merchant transactions, condition compensation on merchant acceptance and receipt of payment, establish payment timing, and authorize chargebacks.

265. The parties' records and the ISO trading-floor model distinguish among merchant opportunity, submission, transaction attribution, funded transaction, commission calculation, Professional Service Fee, participant split, renewal right, payout entry, clearance, draw request, approval, payment, adjustment, and chargeback.

266. Plaintiff does not identify which of those events he treats as the earning event, which amounts he treats as wages, or which Defendant allegedly owed them. Plaintiff does not identify any requested draw that was demanded and denied.

267. Plaintiff alleges a recurring sixty-hour schedule but does not identify, for any workweek, daily start and end times, activities, locations, nonworking intervals, or the person who required or knew of the hours.

268. No single call, email, CRM, login, meeting, or transaction record measures the duration of human activity, and such records cannot be aggregated without accounting for overlap, passive events, and activity of unknown duration.

269. Plaintiff does not identify what monitoring was performed as to him, who reviewed the results, or how any monitoring set his schedule.

270. Plaintiff refers to a "Team Manager" without identifying the person, that person's employer, or the authority allegedly exercised over his schedule, location, compensation, or continued participation.

271. Plaintiff does not identify, for each challenged action, the protected activity, decisionmaker, responsible Defendant, and causal connection.

272. Plaintiff does not identify the roles, agreements, entities, periods, lead sources, work locations, compensation structures, or common policy defining the class and collective he seeks to represent.

273. Without clarification of these matters, discovery cannot be proportionately limited to the claims and defenses actually in dispute.

274. Defendants reserve the right, after all required pleadings have been filed, to seek an order under Federal Rule of Civil Procedure 7(a)(7) directing a limited reply to the matters stated in Defendants' responses and affirmative defenses above, to the extent not answered in Counterclaim-Defendants' answer to these Counterclaims, where necessary to clarify the entity-specific, temporal, factual, and legal basis of Plaintiff's claims, to facilitate proportionate discovery, and to permit orderly resolution of threshold issues under Rule 12(c).

## VI. PRAYER FOR RELIEF

WHEREFORE, Premium Merchant Funding 18, LLC and Premium Merchant Funding One, LLC, and the party named in the First Amended Complaint as "Premium Merchant Funding LLC," without waiving the objections stated above concerning existence, capacity, misnomer, or proper identification, respectfully request that the Court:

a. Dismiss the Complaint in its entirety, with prejudice, and enter judgment in favor of Defendants on all claims;

b. Enter judgment in favor of Counterclaim-Plaintiffs against Counterclaim-Defendants Ryan Roach and Indaloop, LLC on all counterclaims, awarding (i) breach of contract damages, (ii) indemnification under Section 7 of the Agreements for third-party claims arising from calls and solicitations placed outside the required scrubbing procedures, (iii) declaratory judgment that the relationship was independent-contractor in character and that Indaloop, LLC was a contracting party, (iv) disgorgement of all compensation paid to Indaloop during the period of disloyalty under the faithless servant doctrine and, in the alternative, forfeiture under Section 18 of the 2021 Agreement, and (v) such further relief as may be just and proper;

c. Award Defendants and Counterclaim-Plaintiffs costs, disbursements, and reasonable attorneys' fees as the prevailing party pursuant to Section 22 of the 2021 Agreement and Section 19 of the 2023 Agreement and to the extent further permitted by law; and

d. Grant such other and further relief as the Court deems just and proper.

**DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

To the extent any issue is governed by a jury trial waiver in the Agreements, Defendants and Counterclaim-Plaintiffs reserve all rights with respect to the scope and enforceability of any such waiver.

Dated: September 18, 2026
West Hempstead, New York

LAW OFFICE OF STEVEN A.
FELDMAN & ASSOCIATES, PLLC

______________________________
Steven A. Feldman, Esq.
*Attorneys for Defendants*
LAW OFFICE OF STEVEN A.
FELDMAN & ASSOCIATES, PLLC
Attorneys for Defendants and
Counterclaim-Plaintiffs
763 Dogwood Avenue
West Hempstead, New York 11552
Telephone: (516) 537-8357